**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **WILLIAM AUSTIN, III**<br><br>**v.**<br><br>**SONTHEIMER OFFSHORE/CATERING CO. d/b/a. SONOCO and WEEKS MARINE, INC.** | **CIVIL ACTION NO.: 2:23-CV-01602**<br><br>**JUDGE: LANCE M. AFRICK**<br><br>**MAGISTRATE JUDGE: DONNA PHILLIPS CURRAULT** |

**MEMORANDUM IN SUPPORT OF WEEKS MARINE, INC.'S MOTION IN LIMINE TO EXCLUDE TESTIMONY OF PLAINTIFF'S EXPERT ROBERT E. BORISON**

Weeks Marine, Inc. ("Weeks Marine") submits the following Memorandum in Support of its Motion in Limine to Exclude the Testimony of Plaintiff's expert, Robert E. Borison, from trial of this matter, or, in the alternative, to limit the testimony of Borison. For the reasons explained below, Weeks Marine asserts that Borison's opinions constitute impermissible causation and legal interpretations. They are speculative, lack support in the record, and, at a minimum, are entirely unnecessary to resolve or explain the issues in this case. Borison's opinions are superfluous, as this case revolves around a single common-sense issue: did Weeks Marine provide Plaintiff with a safe means of egress from the Weeks Marine dredge. Even ignoring that Borison's report is completely silent as any analysis of this central issue, his opinions as to (1) whether it was negligent for Weeks Marine not to have provided the plaintiff with a non-existent gangway to disembark from the vessel, and (2) whether two Weeks Marine employees and an employee of a water taxi should have exercised stop-work authority should likewise be excluded. No expert is necessary to assist a jury in making these determinations.

## I. FACTUAL BACKGROUND:

### A. OUTLINE OF RELATED ENTITIES TO THIS MATTER.

On or about October 28, 2020, a Weeks Marine dredge ("the Dredge") was seeking shelter from an approaching hurricane in a sheltered area of a canal near Venice, Louisiana by being pushed up against one of the canal banks by two tugboats.[1] Attached to the Dredge was a smaller anchor barge that was closer to the water line than the deck of the Dredge.[2]

The decision was made to offload non-essential personnel and maintain a skeleton crew on board the Dredge to ride out the storm.[3] Those employees who were staying were offered the opportunity to take a water taxi from the Dredge to the nearby dock where they could then move their parked vehicles to a more sheltered location.[4] The water taxi approached the anchor barge and held there to allow for these transfers.[5] Thus, in order to reach the shore, personnel on the Dredge had to first climb down from the Dredge's deck to reach the deck of the anchor barge, walk across the anchor barge and then board the water taxi.[6] The deck of the dredge was perhaps four to five feet higher than the deck of the anchor barge.[7]

There is no gangway on the Dredge.[8] Rather, the Dredge has two built in ladders on opposite sides that allow for a person to climb down all the way to the water line.[9] Martinez has no knowledge as to why the crew did not use the built in ladder.[10] To leave the Dredge and reach

---

[1] Deposition of Isaac Martinez, attached hereto as Exhibit 1, pp. 41-45.
[2] Deposition of William Austin, III, attached hereto as Exhibit 2, p. 65-66; Ex. 1, p. 97.
[3] Ex. 2, pp. 117-118; Ex. 1, p. 52.
[4] Ex. 2, pp. 59-51; Ex. 1, pp. 54-55.
[5] Ex. 2, p. 55.
[6] Ex. 2, p. 55.
[7] Ex. 2, p. 65; Ex. 1, pp. 70-72.
[8] Ex. 1, pp. 79-80.
[9] Ex. 1, pp. 8-9.
[10] Ex. 1, p. 105.

the deck of the anchor barge, personnel climbed down the side of the Dredge by utilizing tires that were chained to the side of the Dredge that were hanging perhaps six inches below the Dredge's deck.[11] Plaintiff was following an employee of Weeks Marine and observed this person step onto the tire and then step or hop down to the deck below.[12] Plaintiff then stepped onto the tire, fell, and was injured. Other persons on the Dredge safely made the transfer without incident.[13] No one, including Plaintiff, used stop work authority[14] and Plaintiff did not consider this method of transfer was unsafe at the time.[15]

### B. BORISON'S REPORT

On October 9, 2023, Robert Borison issued the attached report. In this report, Borison claims to have conducted a root cause analysis which he describes as "technique and procedure for ascertaining and analyzing the causes of accidents."[16] Borison's opinion is two-fold: (1) there should have been a gangway and (2) people, other than Plaintiff, should have used stop work authority.

#### 1. Lack of a Gangway

According to Borison the water taxi captain and Dredge personnel should have erected a gangway and the failure to do so amounted to negligence. Furthermore, Borison contends that the water taxi captain should have directed one of his deckhands to assist passengers during boarding, and Captain Issac Martinez of the Dredge should have instructed the bow tug (the one obstructing the ladder) to move and permit the use of the ladder.

---

[11] Ex. 1, pp. 8-9.
[12] Ex. 2, pp. 53-55.
[13] Ex. 2, pp. 57-58.
[14] Ex. 2, p. 143.
[15] Ex. 2, p. 57-58.
[16] Expert Report of Robert Borison, attached hereto as Exhibit 3, p. 4.

Borison cites a safety standard from the US Army Corps of Engineers to support his arguments. The standard states that 'a stairway, ladder, ramp, gangway, personnel hoist, or other safe means of access shall be provided at personnel points of access with breaks of 19 in (48.2 cm) or more in elevation.' According to Borison, 'The vertical break between the deck of the dredge and the deck of the crew boat was more than 19 inches; therefore, the dredge's ladder should have been provided for Mr. Austin to leave the Dredge.

Additionally, Borison relies on another provision of this authority, which mandates that "gangways and ramps shall be... provided with a standard guardrail." As per the report, no such handrails or guardrails were available to the Plaintiff.

### 2. Utilization of Stop Work Authority

Here, Borison is at his most conclusory. His opinion is that:

> It is my opinion based on my education, training, and experience, that the captain of the *M/V Water Express I*, Captain Isaac Martinez, and Mr. Kenard Tanner, Sr., who witnessed Mr. Austin's accident, failed to use their STOP WORK AUTHORITY to the unsafe transfers from the deck of the *R.S. Weeks* to the crew boat *M/V Water Express I.* Captain Isaac Martinez testified that the previous transfers were made from the dredge to the crew boat were made using either the port or starboard transfer ladders. The elevation between the two vessels was over 19" and therefore, the normally used transfer ladder was needed to provide a safe means of ingress/egress to and from the dredge.[17]

## II. <u>LEGAL STANDARD & ARGUMENT</u>

### A. THE ADMISSIBILITY OF BORISON'S PROFFERED EXPERT OPINIONS ARE GOVERNED BY FRE 702 AND *DAUBERT*.

The admissibility of expert testimony is governed by Rule 702 of the Federal Rules of Evidence, which provides that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other

[17] Ex. 3, pp. 8-9.

> specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, district courts function as gatekeepers and should permit only reliable and relevant expert testimony to be presented to the trier of fact.[18] The district court must be assured that the proffered witness is qualified to testify by virtue of his "knowledge, skill, experience, training, or education."[19] If a purported expert witness is not qualified in a particular field or on a given subject, the court should refuse to allow the witness to testify.[20] "The issue is whether a particular expert has 'sufficient specialized knowledge to assist the jurors in deciding the particular issues."[21]

The test for admissibility of expert testimony requires the Court to undertake a two-part determination: (1) whether the proffered testimony is reliable, which requires an assessment of whether the reasoning or methodology underlying the testimony is scientifically valid; and (2) whether the testimony is relevant.[22] Both inquiries must be satisfied before the proffered expert testimony may be admitted, and the proponent of the testimony bears the burden of proof.[23]

### B. BORISON'S TESTIMONY IS INAPPROPRIATE AND UNNECESSARY.

Expert testimony is admitted for the sole purpose of *assisting* the trier of fact.[24] In analyzing a proposed expert's testimony, the district courts should guard *against* an expert who does not offer anything to the jury except argument:

---

[18] *Sittig v. Louisville Ladder Group, LLC*, 136 F.Supp.2d 610, 615 (W.D. La 2001).
[19] *Id.* (*citing* FED. R. CIV. EVID. 702).
[20] *Id.* (*citing*, *Wilson v. Woods*, 163 F.3d 935 (5th Cir. 1999)).
[21] *Id.* (*quoting*, *Tanner v. Westbrook*, 174 F.3d 542, 548 (5th Cir. 1999)).
[22] *Id.* (*citing*, *Curtis v. M&S Petroleum, Inc.*, 174 F.3d 661 (5th Cir. 1999)).
[23] *Daubert*, 509 U.S. at 592.
[24] *See, Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589–90 (1993).

> The ultimate issue in such cases can too easily become whatever an expert witness says it is, and trial courts must be wary lest the expert become nothing more than an advocate of policy before the jury. Stated more directly, the trial judge ought to insist that a proffered expert bring to the jury more than the lawyers can offer in argument.[25]

The Fifth Circuit has expressly recognized that expert testimony should be excluded if the court finds that "the jury could adeptly assess [the] situation using only their common sense and knowledge."[26] If the evidence and facts of a particular case are such that a lay person can understand them without an "expert's" assistance, then the use of expert testimony is not only unnecessary and unhelpful, it actually invades the domain of common sense matters upon which jurors require no expert assistance. [27] Borison's opinions in this case are unnecessary and unhelpful. This case involves a slip and fall while stepping onto a tire. An expert is not needed to explain how or why this incident unfolded.

In *Beech v. Adriatic Marine, LLC*, Judge Africk held that an expert's opinion as to the tightness and ability of a seaman to open a fuel cap was ultimately based on common sense. Succinctly put, Judge Africk held that "while the average juror may not have turned a fuel valve, they have almost certainly tried opening a pickle jar from the back of the cupboard and failed." 511 F. Supp 3d 750, 760 (E.D. La. Jan. 5, 2021). The same rationale is applicable in this case in that, while the average juror may not have ever climbed down the side of a dredge barge, they are

---

[25] *In re Aircraft Disaster at New Orleans, Louisiana*, 795 F. 2d 1230, 1233 (5th Cir. 1986).
[26] *Peters v. Five Star Marine Service*, 898 F.2d 448, 450 (5th Cir. 1990).
[27] *United States v. Johnson*, 575 F.2d 1347, 1361 (5th Cir. 1978) ("If the question is one which the layman is competent to determine for himself, the opinion is excluded.") (quoting *Steinberg v. Indem. Ins. Co. of N. Am.*, 364 F.2d 266, 274 (5th Cir. 1966)); *see also*, *Thomas v. Global Explorer, LLC*, No. 02-1060, 2003 WL 943645, at *2 (E.D. La. March 3, 2003); *see also Laborde v. SGS North America, Inc.*, 11-544 (M.D. La. October 30, 12) (unpublished) (Brady, J.).

almost certainly familiar with the characteristics of a tire and Borison's report adds nothing to that consideration.

In *Williams v. Eckstein Marine Services, Inc.*, a sister court lamented the growing "cottage industry of 'expert' testimony that has been spawned as a parasitic satellite industry of the litigation practice."[28] Judge McNamara accurately described the standard fare of this "cottage industry":

> The testimony of an "expert" is tendered, who is an individual who happens to have some title, normally describing himself as a "consultant." A review of their "expert" reports normally reveals that the reports consist of their appreciation of the facts (some of which are usually in dispute), their conclusion as to what the law is or ought to be, as far as fixing responsibility for the accident, and for sure, a reservation at the end of the report to change their opinion if they learn more information.[29]

Borison's opinions fall into the same category; they will not assist the jury to resolve any issues in this case.[30] If Plaintiff and Borison are correct, then there is an actual affirmative and express "Safety and Health Requirements" that a "stairway, ladder, ramp, gangway, personnel hoist or other safe means…" of access was necessary due to the height difference between the deck. Thus, the jury's focus will be on whether the tire method constituted an "other safe means" under the circumstances, an aspect on which Borison's report offers no direct opinion. Rather, Borison simply assumes, without analysis, that the use climbing down the side of a vessel is somehow per se unreasonable and unsafe. This is not the case. At least one Louisiana jury found that a substantially similar means of egress from a crew boat was reasonably safe when egressing from the crew boat required that one climb over the vessel's stern, and then down tires before jumping down to the dock at between two to five feet below. *See, Lopez v. Marine Drilling, Co.*, 2002-1223

---

[28] No. 91-1841, 1992 WL 373616, *1 (E.D. La. Dec. 9, 1992).
[29] *Id.*
[30] *See Thomas*, 2003 WL 943645, at *2.

(La.App. 3 Cir. 10/22/03), 859 So.2d 850, 857-58.[31]

Moreover, Borison's handrail opinion appears incongruous in this context and offers little value to the jury. The relied-upon provision concerns a guardrail requirement for "gangways and ramps." If we accept Plaintiff's argument that the Dredge's ladder should have been provided to Plaintiff, the cited provision for guardrails would not apply, as it distinctly outlines requirements for gangways and ramps. Regardless, it is well within the "common sense" of the jury to consider whether the "tire method" used to leave the Dredge was unsafe due to the lack of handrails without any assistance from Borison.

More importantly, Borison's opinions fail to meet the requirements of both Daubert and Rule 702 of the Federal Rules of Evidence. None of the opinions offered support that his conclusions are based on "the expert's scientific, technical, or other specialized knowledge." His proffered opinions lack sufficient facts and data, with no analysis of how the conclusions were derived and a complete absence of analysis on why the debarkation method used was unsafe. Borison's report lacks any scientific principles and methodology sufficient for a proper examination of the path to his opinions. Further, there is no application of those principles and methods to the applicable facts that can be examined. For these reasons alone, Borison's testimony must be excluded pursuant to Fed. R. Evid. 702.

Notwithstanding the above, Borison's opinions are not necessary to assist the factfinder. It does not take an expert to evaluate and determine the circumstances of this incident. The factfinder

---

[31] Like the present matter, Borison was retained by the Plaintiff in *Lopez*. He testified that the egress process was unsafe and that a gangway should have been provided. The jury apparently disagreed. *Lopez* at 854 (testimony summarized); *Id.* at 858 ("…considering that all of the other passengers on board that night were able to safely disembark over the stern, we cannot say that the jury was manifestly erroneous in finding that Tidewater… did not breach their duty of providing… a safe means of egress…")

will hear, see, and comprehend the admissible evidence. Jurors will draw their own conclusions and do not need an "expert witness" to tell them what they can easily discern for themselves.

District Courts, in exercising their post-*Daubert* "gate keeping" obligation, have routinely excluded expert testimony when it is not needed to clarify facts and issues of common understanding.[32] As the U.S. Fifth Circuit instructed in *In re: Aircraft Disaster at New Orleans, Louisiana*, 795 F.2d 1230 (5th Cir. 1986):

> Trial courts must be wary lest the expert become nothing more than an advocate of policy for the jury. Stated more directly, the trial judge ought to insist that the proffered expert bring to the jury more than the lawyers can offer in argument. Indeed, the premise of receiving expert testimony is that it "will assist the trier of fact to understand the evidence or determine a fact in issue… [33]

Further, the Fifth Circuit has repeatedly held that expert testimony should be excluded if the primary facts can be accurately and intelligently described to the jury and, if the jury, as people of common understanding, are as capable of comprehending the primary facts and drawing correct conclusions from those facts as are witnesses possessed with special or peculiar training, experience or observation with respect to the subject under investigation.[34] Other Louisiana federal courts have also excluded the testimony of experts in cases, like this one, which do not present complex factual issues and where the expert report does not offer any specific expertise or other technical or superior knowledge outside of the common knowledge and understanding of the jury.[35] This Court should likewise exclude Borison's opinions in this case as they do not offer any specific expertise or other superior knowledge, and will not aid the trier of fact.

---

[32] *See, Salem v. U.S. Lines Co.*, 370 U.S. 31, 35 (1962).
[33] 795 F.2d at 1233.
[34] *See Eymard; Peters v. Five Star Marine Servs.*, 898 F.2d 448 (5th Cir. 1998); *London v. MAC Corporation of Am.*, 44 F.3d 316 (5th Cir. 1993).
[35] *See Thomas v. Global*, No. CIV.A. 02-1060, 2003 WL 943645, at *2 (E.D. La. Mar. 3, 2003) (wherein the court excluded Mr. Borison's testimony where he merely cited to OSHA regulations

## III. Borison's Opinions Should be Excluded Because Each Usurps the Factfinder's Ability to Make Their Own Conclusions.

Borison's opinions are ripe for exclusion because they do not demand any specialized skill, knowledge, or expertise, and hence, will not assist the jury. More crucially, Borison provides blanket legal conclusions on the ultimate issues that the jury will decide, rendering his opinions improper and inadmissible.

In his report, Borison asserts that his opinions are grounded in his "education, training, and experience." However, each opinion presented in his report seems more like a summary of Borison's understanding of the facts (some of which are disputed by Plaintiff) and blanket legal conclusions.

As an example of a disputed fact, Borison criticizes the Captain of the Water Express for not providing a deckhand to assist Plaintiff as they boarded his vessel.[36] Yet, Plaintiff testified that he was actually injured while climbing from the Dredge onto the attached anchor barge.[37] This fact, whether ignored or missed by Borison, highlights that his opinion, based on his purported knowledge, training, and expertise, fails to address whether the Captain of the Water Express should have stationed a deckhand on the anchor barge. Such a placement might have been in a position to assist Plaintiff during the transfer, potentially preventing the accident.

---

and summarized facts taken from testimony to proffer a potential safety hazard); *Jones v. H.W.C., Ltd.*, 2003 WL 42146 (E.D. La. 2003); *Arauio v. Treasure Chest Casino, No. CIV A. 97-3043, 1999 WL 219771, at *5–8 (E.D. La. Apr. 14, 1999);Diaz v. Delchamps, Inc.*, 1998 WL 42885 (E.D. La. 1998).

[36] Ex. 3, p. 7.

[37] Ex. 2, p. 55.

### A. Borison's Legal Conclusions as to the "Root Cause" of the Accident Are Inadmissible.

The law of this Circuit is that "**an expert may never render conclusions of law**." *See, Goodman v. Harris County*, 571 F. 3d 388, 399 (5th Cir. 2009) (*quoting*, FED. R. EVID. 704) (emphasis added); *see also, Owen v. Kerr-McGee Corp*, 698 F. 2d 236, 240 (5th Cir. 1983). Opinions that merely "tell the fact finder what result to reach or to allow a witness to give legal conclusions are impermissible because they usurp the role of the trier of fact." *Kerr-McGee Corp*, 698 F. 2d at 240.

In *Jacobs v. Northern King Shipping Co.*, Judge Clement held that "conclusions of law … are not properly within the ambit of expert testimony. No. 97-772, 1998 WL 28234, at *2 (E.D. La. Jan. 23, 1998). In that case, an expert marine captain was engaged to provide testimony for the Plaintiff. The Court held that Capt. Davenport's conclusions of law as to whether the crew of the vessel was negligent is a purely legal conclusion and inappropriate; such opinions were stricken. *Id.* Additionally, the court held that despite the purely legal conclusion, Capt. Davenport likewise failed to establish a foundation for his legal opinions – "that he is familiar with the elements of a negligence cause of action under applicable law … and that he is basing his opinion on facts actually within in the record, rather than assumptions or conjecture." *Id.* For that reason, too, Capt. Davenport's opinions were excluded. *Id.*

In *King v. RC Offshore, LLC*, Judge Engelhardt echoed Judge Clement's reasoning. In that case, the court held that statements such as the "failure of the vessel to maintain its position … 'was a direct cause of the incident'" is a clear legal conclusion. No. 14-2404, 2016 WL 558369, at *2 (E.D. La. Feb. 12, 2016). Likewise, declarations that "the operator of the *CHRIS R* was negligent" and that "'there is no evidence or information that actions or omissions … either caused

or contributed to the incident' are the very questions that the jury will consider…." *Id.* All such opinions were excluded. *Id.*

Importantly, contrary evidence existed and such conclusory opinions – telling the jury how to decide – invades the province of the trier of fact and such opinions are inadmissible. *Id.* Specifically, the court astutely held:

> [H]e cannot, wearing the cloak of authority of a court-accepted expert, answer the jury verdict form questions as his ultimate opinions. In other words, [the expert] cannot, in essence, tell the jury (1) the cause (and whose fault) of the incident, (2) the Defendant was negligent, and (3) the Plaintiff's own alleged negligence did not contribute. These considerations are squarely within the jury's province, and expert testimony such as [the expert's] is not admissible.

*King v. RC Offshore, LLC*, No. 14-2404, 2016 WL 558369, at *2 (E.D. La. Feb. 12, 2016) (Engelhardt, J.).

Borison's report contains a collection of conclusory opinions pertaining to the "NO GANGWAY PROBLEM". These opinions essentially are that "the supervisors of the dredge *R.S. Weeks* failed to install, or request to install, a gangway…", that "Captain Frank should have instructed his deckhand to assist the passengers as they boarded his vessel…" and that "Martinez should have instructed the bow tug to move away from the transfer ladders…" All of these conclusions are improper and inadmissible. The report is simply devoid of any explanation or analysis as to when a gangway is appropriate as compared to the other means of egress contained within the relied upon safety provision and lacks any analysis or application of Borison's purported training and expertise regarding when a deckhand should be stationed to assist with passenger boarding.

Perhaps most egregious is Borison's conclusion that Martinez should have instructed the captain of the tug closest to the bow ladders to move that vessel so as to allow the Water Express

to directly approach the Dredge and offload personnel directly from the Dredge. Nowhere in the Borison report is there any discussion, consideration, or analysis regarding whether such a maneuver was feasible, whether the tug could be safely repositioned, whether the Dredge would be placed at risk by having one of its two push boats temporarily not pushing it against the canal bank, and whether Martinez[38], had the authority to direct and control the licensed captains of the tug and the water taxi.

The exact same analysis applies to his conclusory "stop work" opinion.[39] Here, Borison fails to provide a foundation to support his legal and factual conclusions. Instead, he summarily declares that upon review of Martinez's deposition, he determined that the several persons "failed to use their STOP WORK AUTHORITY to the unsafe transfers from the deck of the *R.S. Weeks* to the crew boat *M/V Water Express I."* This bare and unsupported conclusion lacks the depth of any requisite expertise, and such a legal argument may be presented directly to the jury by Plaintiff's counsel. It does little more than instruct the jury on which boxes to check on the verdict form and is ultimately unhelpful, warranting exclusion.

In total, it is evidence from Borison's report that his proffered testimony is improper, encroaches on the province of the trier of fact, and lacks sufficient foundations for his declarations beyond mere conjecture. Such opinions will not assist the jury in determining the issues in this case and his testimony will do nothing more than impermissibly "tell the fact finder what result to reach." *See*, *Richardson v. SEACOR Lifeboats, LLC*, No. 14-1712, 2015 WL 2193907, at * 3 (E.D. La. May 11, 2015) (Morgan, J.). Such determinations are improper for experts, as those decisions

[38] Ex. 1, pp. 14-15. Martinez held no licenses that would have allowed him to operate a vessel. No such license is required to operate the Dredge as it has no means of self-propulsion. Martinez is more of a dredge supervisor.
[39] Ex, 3, pp. 8-9.

as to ultimate issues are reserved for the jury. Therefore, Weeks Marine moves to exclude the entirety of Borison's opinions.

## IV. <u>CONCLUSION.</u>

For the foregoing reasons, Plaintiff's expert, Robert Borison, should be excluded from testifying during trial. The Federal Rules of Evidence require that proffered testimony must met certain requirements; none are present in Borison's report and cannot therefore be relied upon. More importantly, Borison's opinions and testimony will not assist the jury in examining the facts of this case nor will they assist the factfinder in resolving any issues. Instead, each opinion proffered contains an overarching legal conclusion that lacks sufficient foundation and invades the province of the jury.

In accordance with Federal Rule of Evidence 702 and *Daubert*, this Court should exercise its gatekeeping role to exclude the opinions of Plaintiff's expert, Robert Borison.

Respectfully submitted:

/s/ Robert M. Kallam

Robert M. Kallam, (#20242)
Brian J. Lindsey (#35887)
**KEAN MILLER LLP**
600 Jefferson St. Suite 1101
robert.kallam@keanmiller.com
Brian.lindsey@keanmiller.com
***Attorneys for Weeks Marine, Inc.***

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing was electronically filed with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent by operation of the Court's electronic filing system to all known counsel of record.

Lafayette, Louisiana, this 19th day of December, 2023.

/s/ Robert M. Kallam