**TOTAL SAFETY SERVICES, INC.**
218 MAGNOLIA STREET
LONG BEACH, MISSISSIPPI 39560

# WILLIAM AUSTIN, III
# VS.
# SONTHEIMER OFFSHORE/CATERING CO. d/b/a SONOCO and WEEKS MARINE, INC.

**DATE**
**October 9, 2023.**

**CIVIL ACTION:**
**NO. 23-1602**

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**
**JUDGE LANCE M. AFRICK**
**MAGISTRATE JUDGE DONNA PHILLIPS CURRAULT**

**Prepared for**

**MR. JOHN G. MUNOZ**
**GARNER & MUNOZ**
**935 GRAVIER ST., SUITE 1140**
**NEW ORLEANS, LOUISIANA 70112**

**TELEPHONE NO.:(504) 415-0945**
**111TOTAL@GMAIL.COM**

# INTRODUCTION

This ROOT CAUSE ANALYSIS report investigates the accident that occurred aboard the ***R.S. WEEKS***, a trailing suction dredge (Industrial Vessel), owned and operated by Weeks Marine, Inc., on or about October 28, 2020, at or about 8:00 AM, and outlines the findings from that investigation.

# QUALIFICATIONS

**GENERAL QUALIFICATIONS:** A safety professional, in any given industry, is required to have a working knowledge of the various operations his company performs in that industry, as well as a working knowledge of the applicable governing regulations. I have over 50 years of safety experience in the industries relating to the exploration, production, and transport of oil and gas and the marine, general, and commercial industries. While working in these industries, I have developed expertise relating to safety issues on production platforms, barges (pipe laying, dredging, drilling, jack-ups, lift-boats, spud, supply, deck, oil, tank, etc.), structural, fabrication yards, and vessels/boats (ship, MODU, tug, tow, supply, crew, etc.), and commercial and industrial buildings and building projects.

This on-the-job work experience began in the mid-sixties while working offshore in the Gulf of Mexico on production platforms and drilling rigs, performing the duties of a Roustabout, Rigger, Welder's Helper, and Wireline Operator. I also worked on the Mississippi River, worked in Fabrication yards and Shipyards as a Roustabout, Rigger, Welder's Helper, Heavy Equipment, and Crane Operator. Further safety experience and expertise were derived from being the manager/supervisor of the Safety Department for Amerada Hess Corp. (Lafayette region); J. Ray McDermott, Inc. (Marine and Diving Divisions, Harvey Group), McDermott International, Inc. (Singapore, South East Asia Group) and the president or owner of Contract Safety Consultants, Preferred Employees, and Total Safety Services, Inc. Companies I worked for include, New Orleans Stevedores, Houma Welders, Smith Wallender, Boland Machine, and Manufacturing. My safety consulting experience was gained by providing safety consultant services at the following: Gulf South Laboratories, Engineering Inspection and Investigation, Inc., Inspection Consultants, Inc., Ray Gibbins Industries, Allied Wireline, Western Wireline, Popich Brothers, Space, L&L Construction, Kaough & Jones, Kranco, Garza Welding, T & A Wireline, TCB Industries, Rembco, Foley Construction, Delta Coatings, Delta Temp, Inc., Cortex, Southern Environmental Control, Eagle Marine, American Marine, Mosby Enterprises, Total Marine Services, Vela Garage, Doomlar, Energy Drilling, Grady Crawford, Guilliot Construction, J & J Electric, Taylormade Enterprises, U. S. Abatement, Vogt Construction, Wescorp Construction, and Blake Drilling,

The companies I was employed by or contracted with followed the Federal regulations listed below, and voluntarily followed the Industry Standards of Care as listed. As their safety officer, I was required to have a working knowledge of those regulations and standards of care and the ability to apply them to the company's oil and gas exploration and productions and marine, general, industrial, and commercial work activities.

**Subcategories for each section are listed in more detail in my *Curriculum Vitae*.**
**Working knowledge of Federal Regulations 29:**

1910 General Industry, 1926 Construction, 1915 Shipyard, 1918 Longshoring, 1919 Gear Certification

**Working knowledge of Federal Regulations 46:**
Subchapter C - Uninspected Vessels
Subchapter D – Tank Vessels
Subchapter H – Passenger vessels
Subchapter I - Cargo and Miscellaneous Vessels
Subchapter I-A - Mobile Offshore Drilling Units
Subchapter K – Small Passenger Vessels carrying more than 150 passengers
Subchapter L – Offshore Supply Vessels
Subchapter M – Towing Vessels
Subchapter T – Small Passenger Vessels

**Working knowledge of Federal Regulations 33:**
Subchapter N - Outer Continental Shelf Activities

**Working knowledge of the following industry standards:**
(API) American Petroleum Institute
(ANSI) American National Standards Institute
(ASME) American society of Mechanical Engineers
(AWS) American Welding Society
(CGA) Compressed Gas Associations, Inc.
(ASTM) American Society for Testing and Materials
(ABS) American Bureau of Shipping
(NFPA) National fire Protection Association
(NIOSH) National Institute for Occupational Safety and Health
(SAE) Society of Automotive Engineers
(UL) Underwriters Laboratories
(NEC) National Electrical Code
(AWO) American Waterways Operators
(ISM) International Safety Management
(SSPC) Steel Structures Painting Council.

**ACCIDENT SPECIFIC QUALIFICATIONS:** As the safety supervisor for Amerada Hess Petroleum Company, my responsibilities included inspecting all methods of ingress and egress including any gangways at all their facilities and watercraft. This included drilling and workover contractors servicing our inland and offshore facilities.

As the safety professional for J. Ray McDermott and McDermott International, I was responsible for inspecting all methods of ingress and egress, including gangways, on all their vessels. The vessels included barges (pipe laying, dredging, drilling, jack-ups, spud, supply, etc.) and our inland and ocean-going vessels (tug, supply, crew, etc.). As the fabrication and shipyards constructed many of the vessels and structures used

in the exploration, production, and transport of petroleum products, I was also responsible for inspecting those projects for compliance with our safety specifications relating to the use of gangways to ingress and egress from those projects.

As a safety consultant with Contract Safety Consultants and Total Safety Services, Inc., I have been involved in the use and inspections of gangways associated with vessels/barges/fabrication/construction and other work sites throughout the Gulf of Mexico and inland waterways in Louisiana and Texas since 1986. Some of these customers included: Ray Gibbins Industries, Inc., Apache Well Service, Inc., Cortex, T&A Wireline, TCB Industries, Delta Coating, Inc., Allied Wireline, Mosby Enterprises, Total Marine Services, Doomlar, Vogt Construction, C&C Marine, and Delta Temp Services, Inc. As the safety consultant, I have evaluated various means of ingress/egress including the use of gangways for projects with the United States Department of Energy at the various Strategic Petroleum Reserve sites.

## METHODOLOGY – ROOT CAUSE ANALYSIS

The evaluation tool I use to investigate and analyze an accident is based on widely recognized and accepted accident investigation analysis principles and methods employed in the safety profession: the **ROOT CAUSE ANALYSIS (RCA)**.

My **ROOT CAUSE ANALYSIS (EVENTS AND CAUSAL FACTOR ANALYSIS)** is used to investigate this accident and my report is a structured step-by-step technique and procedure for ascertaining and analyzing the causes of accidents. The PROBLEMS AND DEFICIENCIES listed below in my report are examples of the major accident categories that should have been included when the crew completes a **(JSA)** and would be included in a ROOT CAUSE ANALYSIS investigation:

**EXEMPLARY MAJOR ACCIDENT CATEGORIES**
**EQUIPMENT/MATERIAL PROBLEMS,**
**PROCEDURE PROBLEMS,**
**DESIGN PROBLEMS,**
**TRAINING DEFICIENCIES,**
**MANAGEMENT PROBLEMS.**

Examples of the accident subcategories listed in my report address the specific accident PROBLEMS AND DEFICIENCIES related to the accident:

**EXEMPLARY SUBCATEGORIES**
**DEFECTIVE TOOLS / EQUIPMENT,**
**PRE-EMPLOYMENT EMPLOYEE EVALUATION,**
**PRE-JOB / EMPLOYEE EVALUATION (JSA),**
**PERSONAL PROTECTIVE EQUIPMENT,**
**TRAINING / CERTIFICATION / LICENCES,**

FEDERAL AND /OR STATE STANDARDS / INDUSTRY STANDARDS,
INDUSTRY SAFETY MANUALS AND PUBLICATIONS.

# ROOT CAUSE ANALYSIS

## I. DATA COLLECTION

The following documents were reviewed in preparation for this root cause analysis report:

**Deposition Testimony:**

- Mr. William Austin

**Miscellaneous documents:**

- PLAINTIFF'S INITIAL DISCLOSURES.
- CONTRACTOR INDEMNIFICATION AGREEMENT
- EMPLOYER'S FIRST REPORT OF INJURY.
- RECORDED INTERVIEW WITH GLENN ALEXANDER.
- TRANSCRIBED INTERVIEW OF MR. GLENN ALEXANDER
- TRANSCRIBED INTERVIEW OF CAPTAIN ISAAC MARTINEZ
- RECORDED INTERVIEW OF MR. ISAAC MARTINEZ.
- MR. WILLIAM AUSTIN - PERSONNEL FILE.
- SONTHERIMER OFFSHORE/CATERING COMPANY. DBA SONOCO'S RESPONSES TO PLAINTIFF'S REQUEST FOR PRODUCTION OF DOCUMENTS.
- WEEKS MARINE– EMPLOYEE INJURY/ILLNESS REPORT.
- SAFETY EXECUTION PLAN -WEATHER GUIDELINE
- EMAILS.
- ACTIVITY HAZARD ANALYSIS.
- LEVERMAN'S DAILY REPORT.
- ACCIDENT PREVENTION PLAN
- CONTRACTOR'S EQUIPMENT ASSET LIST.
- GENERAL ARRANGEMENTS DRAWING OF R.S. WEEKS.
- SUPERVISORS INJURY REPORT.
- GOOGLE EARTH
- KANARD TANNER WITNESS STATEMENT
- R.S. WEEKS DOCUMENTATION.
- WATER EXPRESS LOG
- PHOTOGRAPHS
- WEEKS MARINE INITIAL DISCLOSURES.

- **WEEKS MASTER SERVICE AGREEMENT.**
- **WEEKS MARINE, INC.'S ANSWERS TO PLAINTIFF'S FIRST SET OF DISCOVERY.**
- **SONOCO'S HEALTH, SAFETY, AND ENVIRONMENTAL POLICY.**
- **SONOCO GALLEY HAND/UTILITY HAND/BR HAND DESCRIPTION AND TRAINING**
- **CERTIFICATE OF INSPECTION FOR THE R.S. WEEKS.**

## II. ACCIDENT DESCRIPTION

Mr. William Austin was employed as a Galley Hand by SONOCO and was assigned to work aboard the *R.S. WEEKS*, a trailing suction dredge (Industrial Vessel), owned and operated by Weeks Marine, Inc. Mr. Austin testified that he had worked on the dredge for approximately six weeks straight and had gotten off of the dredge several times using the dredge's gangway. Captain Isaac Martinez was the dredge's Captain; Mr. Kenard Tanner, Sr. was the Mate, and Mr. Glen Alexander was a witness to Mr. Austin's accident. Mr. George Williams was Mr. Austin's immediate supervisor. Other members of the galley crew were Mr. Philip Stewart and Mr. Tony Trujillo.

On the morning of Mr. Austin's accident, he was working the day shift, 2:00 AM to 2:00 PM, when Captain Martinez approached him and instructed him to catch the crew boat to the dock and move his vehicle because a hurricane was approaching. According to the defense interrogatories, the dredge was located in Venice, Louisiana preparing to shelter for an upcoming hurricane. According to Captain Isaac Martinez's recorded statement, he split the dredge's crew in half allowing half to catch the crew boat ***M/V WATER EXPRESS I*** to the dock where they could move their vehicles to safety. Mr. Austin was on the second batch of workers allowed to catch the crew boat and move their cars.

Captain Isaac Martinez stated that the dredge had two tugs positioned on the dredge's port side pushing the dredge up against the bank. One tug was on the dredge's bow and the other tug was on the dredge's stern. Captain Isaac Martinez stated that normally the crew would climb down one of two ladders located on the port and starboard bow of the dredge to make transfers to the crew boat. However, because one of the tugs was blocking the ladders, the transfers were being made through the dredge's two-foot-wide opening in the midship handrail. Photographic evidence shows a bumper tire in line with that opening in the handrail. The opening in the handrail denotes a personnel point of access on the dredge. Mr. Glen Alexandra, a witness to Mr. Austin's accident, stated that the distance between the dredge's handrail and the edge of the dredge's deck was about one foot. Mr. Glen Alexandra also estimated the distance from the dredge's deck to the tire to be about six inches. Mr. Glen Alexandra stated that the distance from the top of the tire to the deck of the ***M/V WATER EXPRESS I*** to be between three to four feet. Mr. Glen Alexandra stated that you could not just step but had to jump from the tire to the deck of the crew boat.

On the morning of Mr. Austin's accident, he came down the flight of stairs and followed another crew member boarding the ***M/V WATER EXPRESS I. M/V WATER EXPRESS I*** is a small passenger vessel, owned and operated by Bud's Boat Rental, Inc. The testimony indicates that the vessel was "bow to" port side of the dredge at the time of Mr. Austin's accident. The vessel had a square bow with small push knees and a handrail

installed on the bow. Mr. Autin testified that he believed that there were approximately 5 to 6 other passengers already on the crew boat just prior to his accident. Following his fellow crewmember, Mr. Austin stepped down onto the dredge's bumper tire, attached to the side of the dredge with a chain. Mr. Austing was then going to jump down onto the deck of the ***M/V WATER EXPRESS I***. As Mr. Austin stepped onto the rain-covered tire he slipped and fell, landing first on the tire and then on the deck of the crew boat. Mr. Austin sustained his injuries during this time.

# III. ASSESSMENT / OPINIONS

*I am using the above ROOT CAUSE categories to analyze this accident from a Safety Professional's standpoint.*

# OPINION NO. 1

## NO GANGWAY PROBLEM

**CAPTAIN FRANK OF THE CREW BOAT *M/V WATER EXPRESS I*, WEEKS MARINE, INC. AND CAPTAIN ISAAC MARTINEZ'S FAILURE TO PROVIDE MR. AUSTIN WITH A SAFE GANGWAY TO MAKE THE OVER-THE-WATER TRANSFER FROM THE DREDGE TO THE CREW BOAT.** It is my opinion based on my education, training, and experience that the captain of the ***M/V WATER EXPRESS I*** and the supervisors of the dredge ***R.S. WEEKS*** failed to install, or request to install, a gangway for Mr. Austin and the other crew members to gain access to the crew boat.

Captain Frank of the crew boat ***M/V WATER EXPRESS I*** was responsible for the crew members making safe over-the-water transfers to his vessel from the dredge ***R.S. WEEKS.*** As such, Captain Frank had an obligation to request that a gangway be installed between the two vessels. Additionally, Captain Frank should have instructed his deckhand to assist the passengers as they boarded his vessel.

Captain Isaac Martinez, the dredge captain, was responsible for the safe ingress/egress to and from his dredge. As such, Captain Isaac Martinez should have instructed the bow tug to move away from the transfer ladders normally used by the crew to boat crew boats.

## THE CORP OF ENGINEERS' EM 385-1-1, PUBLICATION SETS THIS INDUSTRY'S SAFETY STANDARDS

**DEPARTMENT OF THE ARMY**
**EM 385-1-1**
**U.S. ARMY CORPS OF ENGINEERS**
**WASHINGTON, D.C. 20314-1000**
**MANUAL: NO. 385-1-1 30**
**NOVEMBER 2014**

## SAFETY AND HEALTH REQUIREMENTS

**19.B Access.**
**19.B.01 General.**

a. Means of access shall be properly secured, guarded, and maintained free of slipping and tripping hazards. > See Section 24.
b. Non-slip surfaces shall be provided on working decks, stair treads, ship ladders, platforms, catwalks, and walkways, particularly on the weather side of doorways opening on deck.

**19.B.02 Access to/from vessels.**

a. Safe means for boarding or **leaving a floating plant** shall be provided and guarded to prevent persons from falling or slipping thereon. Walking on rip-rap should be avoided where practical.
b. A stairway, **ladder**, ramp, gangway, personnel hoist or other safe means of access shall be provided at **personnel points of access with breaks of 19 in (48.2 cm) or more in elevation. (Emphasis added)**

**(OPINION COMMENT): The vertical break between the deck of the dredge and the deck of the crew boat was more than 19", therefore, the dredge's ladder should have been provided for Mr. Austin to leave the dredge.**

c. Ramps for access of equipment and vehicles to or between vessels shall be of adequate strength, be provided with sideboards, and be well maintained.
d. Gangways and ramps shall be:
(1) Secured at one end by at least one point on each side with lines or chains to prevent overturning;
(2) Supported at the other end in such a manner to carry them and their normal load during use in the event they slide off their supports;
(3) Placed at an angle no greater than that recommended by the manufacturer; and
(4) Provided with a **standard guardrail** (toe boards are optional depending on their usefulness and the hazard involved).**(Emphasis added)**

**(OPINION COMMENT): There were no handrails or guardrails for Mr. Austin to hold onto as he made the transfer from the deck of the dredge to the deck of the crewboat. The dredge's cable handrails would have been at least one foot behind anyone attempting to use them to balance themselves as the stepped down onto the wet tire and then down onto the crew boat that was three or four feet below the tire.**

*******************************************************************************************

# OPINION NO. 2

## STOP WORK AUTHORITY PROBLEM

**CAPTAIN FRANK OF THE *M/V WATER EXPRESS I*, CAPTAIN ISAAC MARTINEZ, AND MR. KENARD TANNER SR.'S FAILURE TO USE THEIR STOP-WORK-AUTHORITY TO PREVENT ANYONE FROM BOARDING THE *M/V WATER EXPRESS I* FROM THE *R.S. WEEKS* WITHOUT THE USE OF THE DREDGE'S NORMAL TRANSFER LADDER.** It is my opinion based on my

education, training, and experience that the captain of the ***M/V WATER EXPRESS I,*** Captain Isaac Martinez, and Mr. Kenard Tanner, Sr., who witnessed Mr. Austin's accident, failed to use their STOP WORK AUTHORITY to the unsafe transfers from the deck of the ***R.S. WEEKS*** to the crew boat ***M/V WATER EXPRESS I.*** Captain Isaac Martinez testified that the previous transfers were made from the dredge to the crew boat were made using either the port or starboard transfer ladders. The elevation between the two vessels was over 19" and therefore, the normally used transfer ladder was needed to provide a safe means of ingress/egress to and from the dredge.

****************************************************************************************

**FEE SCHEDULE:**

Hourly charges are from portal to portal.
All expenses reimbursed by the client.
$1920.00 for deposition and trial testimony (a minimum 3-hour charge, includes preparation time)
$320.00 per hour for all other services provided (fees are subject to annual increases).
$ 0.86 per mile for travel

The opinions found in this report are professional safety opinions relating only to this accident. While the expert opinions concern factual circumstances, which may be found by the trier of fact to constitute fault, they are not intended to be legal conclusions, as this is a matter for the court to determine and the trier of fact to decide. These opinions are based solely upon my many years of experience in the field of safety as it relates to this accident and should not be compared to other opinions in other cases.

If further discovery, research, inspections, and/or review should develop additional information that would alter my opinion, the conclusions reached herein would be subject to my revision and this report amended as necessary.

Sincerely Yours

Robert E. Borison

Robert E. Borison
President
Total Safety Services, Inc.

## APPENDIX

## DEPOSITION TESTIMONY USED TO FORM MY OPINION

*This pagination may not follow the transcript of the official depositions.*

**MR. WILLIAM AUSTIN, III TESTIFIED AS FOLLOWS:**

PAGE 32: Q. If your accident was in, I think, October 2020, do you know how long you had
PAGE 33: 1 been working on the Weeks job before your 2accident? A. Six weeks.
PAGE 33: Q. So you worked an approximate six-week single hitch? A. Yes, sir.
PAGE 34: Q. Who was your boss at Sonoco? A. As in his full name or -- Q. Whatever you call him. A. We called him King George.
PAGE 36: Q. Okay. Was there a supervisor on 19every job, a Sonoco supervisor, on every job 20you did? A. Yes, sir.
PAGE 37: Q. How many Sonoco people worked with you on the Weeks barge? A. Four.
PAGE 38: Q. I've got George Williams. That's probably King George, right? A. Got it. Yes, sir. Q. Philip Stewart. Do you remember him? A. I do not remember the name. Q. Okay. How about Tony Trujillo? A. I don't remember.
PAGE 38: Q. Okay. What watch did you work on the Weeks barge? A. 2:00 to 2:00. Q. 2:00 a.m. to 2:00 p.m.? A. 2:00 a.m. to 2:00 p.m., but we would swap.
PAGE 39: Q. Okay. Was it George? A. No. It wasn't George. George was a cook. I was a UT. Q. What does UT stand for? A. Utility hand, galley hand.
PAGE 40: Q. Did you ever report any safety concerns to George? A. Before the accident? Q. Before the accident. A. No, sir.
PAGE 40: Q. Yeah. Absolutely. A. Okay. I did report something to George about the safety on the rig. Q. Okay. What did you tell George? A. That we don't do enough JSAs. I did tell him that. Q. Okay. And were you referring to 24the, like, galley-specific JSAs or -- A. Within our division.
PAGE 41: Q. How long before your accident did you make that comment to George? A. I think probably after the first week.
PAGE 41: Q. Okay. And what was his response? A. He was working. He continued working.
PAGE 41: Q. All right. How many JSAs -- how often would you do JSAs on the Weeks barge? A. We didn't do JSAs on the Weeks barge that I remember, no, sir.
PAGE 43: Q. Okay. So you think Isaac Martinez was the captain? A. If I'm not mistaken.
PAGE 44: Q. I saw a document that listed the
PAGE 45: 1mate on the barge as Kenard Tanner. Does that sound familiar to you?
PAGE 45: Q. Did you ever have any interaction with Nate Tanner? A. Roommate. Q. He was your roommate? A. Uh-huh.
PAGE 45: Q. Your accident happened while you were getting off the Weeks barge, right? A. Uh-huh.
PAGE 46: Q. So just tell me why you got off, how you got off. A. They would use a gangplank. Every time we would dock they would have a plank, and we would just walk down and use the handrails.
PAGE 48: Q. How many times had you disembarked the Weeks barge before the day of your accident? A. Before the accident you're talking 11about, right? Q. Yeah. Not including the time you had your accident. A. A few.
PAGE 48: Q. Okay. And why would you be getting off the barge prior to your accident? A. Well, one time we got off, we docked to move our vehicles. Another time we 19got off just to go to the store and come back.
PAGE 49: Q. On the day of your accident, were you getting off to move your car? A. Yes, sir. Q. Okay. Because there was a hurricane coming in? A. Yes, sir.
PAGE 49: Q. On the day of your accident, what watch were you working on?
PAGE 49: A. The day shift. Q. Okay. So that's 2:00 a.m. to 2:00 p.m.? A. Yes, sir.
PAGE 49: Q. I saw an accident report that your accident happened around 8:00 a.m. Does that

PAGE 50: 1 sound right to you? A. Yes, sir.
PAGE 50: Q. Did someone tell you, hey, you need to go move your car? A. Yes, sir. Q. Who told you that? A. The captain. Q. Martinez? A. Yes, sir. Q. Was it, like, an announcement to 22the whole crew? A. Uh-uh.
PAGE 50: Q. Tell me about how you heard you needed to move your car.
PAGE 51: A. Well, they were announcing people were getting off. That was an announcement, you know, but Martinez came to me directly, and he asked me if I moved it or if I left it.I told him, no, sir. So he directly gave me a command, get off the vessel and go move your car now.
PAGE 54: Q. All right. So you saw that other guy do it, and you just went to the same spot as him? A. Yes, sir. Q. Okay. Was there anyone standing at the spot where you were to disembark? A. No, sir.
PAGE 55: Q. Okay. And so my understanding is you had the Weeks barge, and then there was some other barge it was pushed up against, and you had to walk across that other barge to get to the crew boat; is that right? A. Yes, sir.
PAGE 55: Q. Is there a reason why the crew boat couldn't pull directly alongside the Weeks barge that you're aware of? A. No, sir.
PAGE 55: Q. Okay. Where was George when you were getting off the Weeks barge?
PAGE 56: A. He was in the kitchen.
PAGE 56: Q. Okay. Did any of the other Sonoco guys get off to move their cars on the day of your accident? A. Not that I know of.
PAGE 56, Stamp (starred)
PAGE 56: Q. Every time you or someone else that
PAGE 57: 1you saw got off that barge prior to the day of your accident, the gangway was used; is that right? A. Yes, sir. Or the personnel basket. 5I've seen that.
PAGE 57: Q. Okay. So am I correct that you
PAGE 58: 1 didn't raise any kind of concern about this method of disembarking the barge with anybody; is that fair? A. The captain told me to get off, so I seen everybody else getting off, so I got off.
PAGE 58: Q. Yeah. Before your accident, before you fell, am I correct you didn't raise any concern about this method of getting off the barge with anybody? A. No, sir.
PAGE 60: Q. All right. Was this opening where you walked through to step on the tire, was it the place where they would usually put the gangway? A. I can't recall.
PAGE 61: Do you know where the gangway was stored on the Weeks barge? A. No, sir.
PAGE 61: Q. Do you know whether there was a usual location where the gangway was put into
PAGE 62: place for embarking and disembarking on the 2Weeks barge? A. No, sir.
PAGE 62: Q. Okay. How many people were on the crew boat when you went to get off the barge? Best estimate. A. I want to say maybe five, maybe six. It could be even seven.
PAGE 62: Q. Okay. Tell me about that. What else were they getting off for? A. Some was moving their cars. Some was going home. And some was going to the hotel. Yes, sir.
PAGE 63: Q. Okay. Do you know whether George
PAGE 64: was aware of the manner in which you would be 2getting off the barge on the day of your 3accident? A. No, sir.
PAGE 64: Q. Just look back at Exhibit C. You6have it right in front of you. To get off, did you put -- were you just stepping forward and putting one foot on the tire? A. Stepping forward, yes, sir. Q. Okay. Were you holding on to anything? A. No, sir. There was nothing to hold on to.

PAGE 64: Q. Yeah. Your plan was to step on the tire, and then step down to the barge, right? A. The plan was tire, tire, barge.
PAGE 64: Q. Was there a tire on the other barge?
PAGE 65: A. Yes, sir. Q. Okay. So you would have to step across two tires and get on the barge? A. Yes, sir.
PAGE 65: Q. No. From the top of the tire. You step off the yellow onto the tire, right? A. Got you.
PAGE 65: Q. After that, the plan was to step down onto another tire attached to the other 16barge, right? A. Yes, sir. Q. So what is that drop distance from 19the top of the tire that you were on to the next tire? A. A rough estimate? Q. Uh-huh.
PAGE 65: A. It could be a couple of feet, four feet maybe, five, give or take.
PAGE 65: Q. Okay. So it would be farther than
PAGE 66: a normal step on some stairs? A. Yes, sir. It probably could even be six. I didn't measure.
PAGE 66: Q. So the barge you were intending to step down onto, that's what you fell onto? A. Yes, sir.
PAGE 67: Q. So did you land, like, on your rear end on the barge? A. I landed on my tailbone, my butt. Tailbone.
PAGE 67: Q. What was the weather like at the time of your accident? A. Windy, light rain. A lot of wind.
PAGE 67: Q. So the tire that you stepped on from the Weeks barge, I assume it was wet; is 15that right? A. Yes, sir.
PAGE 67: Q. Okay. What kind of shoes were you wearing at the time of your accident? A. At the time, steel-toed boots. Steel-toed shoes. I'm sorry.
PAGE 69: So I walked down the stairs, walked to the little opening. I looked down. I look up. I see everybody looking at me. Some people was, like, hey, come on, man, what's the deal? Let's go. And I remember just stepping forward to get on the tire. And, as I stepped forward to get on the tire, that's when I slipped off. And I fell on the barge on my tailbone, and I bounced back up. To summarize everything, you know.
PAGE 69: Q. Okay. And you were saying earlier there were actually two tires. There was a tire attached to the Weeks barge. A. Yes, sir. Q. And a tire attached to what I'll represent to you is a Bud's Boat Rental 21barge, okay. So maybe we can just call it the Weeks barge and the Bud's barge. Okay? A. Okay. Got you.
PAGE 70: Q. You put your foot on the tire attached to the Weeks barge, right? A. Yes, sir. Q. And that's when you slipped; is that right? A. Yes, sir.
PAGE 70: Q. Okay. And then you fell forward onto the Bud's barge; is that right? A. Yes, sir.
PAGE 71: Q. Okay. And then did you proceed after that to the crew boat? A. Yes, sir.
PAGE 75: Q. Did you have to walk across that Bud's barge to get back onto the Weeks barge?
PAGE 76: A. I had got help to get back on top of the Weeks barge, yes, sir. Q. Okay. So you transferred directly 4from the crew boat back to the Weeks barge? A. Yes, sir.
PAGE 121: Do you know about the height differential, say, between the Weeks barge and then this other barge that you landed on, what the overall height distance would be? A. No, sir.
PAGE 121: Q. Do you think it was taller than you? If you were standing up on the second barge, would your head be above the deck of the Weeks barge? A. No, sir.
PAGE 121: Q. How close were the two barges together? Were they pushed up against each 21other? Was there a five-foot gap you had to kind of jump across, or what? A. There was a gap. As in the width of the gap, I don't know, sir.
PAGE 122: Q. When you stepped down onto the 6tire, did the tire shift or move in any way? A. Not that I know of, no, sir. Q. Did your foot get caught on the chain or anything like that? A. No, sir.

PAGE 123: Q. Do you remember seeing any water collected on the tire prior to your accident? A. It was wet. It was wet.

PAGE 123: Q. Were you carrying or holding any sort of gear or a backpack or anything like that at the time of the accident? A. No, sir.

PAGE 123: Q. And did you ask for any sort of assistance from anyone standing around to 22make the transfer? A. There was no one standing around.

PAGE 125: Q. Do you remember if it was your left foot or your right foot that you had lowered down? A. It was my right foot.

PAGE 126: Q. Okay. So you remember hitting the 7tire first and then the barge? A. Yes, sir.

# ROBERT E. BORISON
## 218 MAGNOLIA ST
## LONG BEACH, MISSISSIPPI 39560


## FEE SCHEDULE:

Hourly charges are from portal to portal.
All expenses will be reimbursed by the client.
$3000.00 non-refundable retainer is requested before any work is started.
$2100.00 for deposition and trial testimony (minimum 3-hour charge)
$350.00 per hour for all other services provided
$ 0.86 per mile for travel

## CURRICULUM VITAE

### EXPERIENCE

A safety professional, in any given industry, is required to have a working knowledge of the various operations his company performs in that industry, as well as a working knowledge of the applicable governing regulations. I have over 50 years of safety experience in the industries relating to the exploration, production, and transport of oil and gas and the marine, general, and commercial industries. While working in these industries, I have developed expertise relating to safety issues on production platforms, barges (derrick, crane, pipe laying, dredging, drilling, jack-ups, lift-boats, spud, supply, deck, oil, tank, etc.), structural, fabrication yards, and vessels/boats (ship, MODU, tug, tow, supply, crew, etc.), and commercial and industrial buildings and building projects.

This on-the-job work experience began in the mid-sixties while working offshore in the Gulf of Mexico on production platforms and drilling rigs, performing the duties of a Roustabout, Rigger, Welder's Helper, and Wireline Operator. I also worked on the Mississippi River, worked in Fabrication yards and Shipyards as a Roustabout, Rigger, Welder's Helper, and Heavy Equipment, and Crane Operator. Further safety experience and expertise were derived from being the manager/supervisor of the Safety Department for Amerada Hess Corp. (Lafayette region); J. Ray McDermott, Inc. (Marine and Diving Divisions, Harvey Group), McDermott International, Inc. (Singapore, South East Asia Group) and the president or owner of Contract Safety Consultants, Preferred Employees, and Total Safety Services, Inc. Companies I worked for included, New Orleans Stevedores, Houma Welders, Smith Wallander, Boland Machine and Manufacturing. My safety consulting experience was gained by providing safety consultant services at the following companies:

**Ray Gibbins Industries** – provided lease operators, riggers, crane operators, roustabouts, and roughnecks to Shell, Chevron, Texaco, Conoco, and Freeport McMoran, and other smaller oil companies for their production and drilling operations in the Gulf of Mexico. We also supervised and operated the Marine Terminals/docks for Shell, Chevron, Texaco, and Conoco in Venice, LA.

**Cortex** - provided lease operators, riggers, crane operators, roustabouts, and roughnecks to Shell, Chevron, Texaco, Conoco

**Allied Wireline** – Owned jack up wireline barges and performed wireline work in the Gulf and inland waters.

**Western Wireline** - Owned wireline units and performed wireline work in the Gulf and inland waters.

**Gulf South Laboratories** –Quality Control company that worked for various governmental parishes for welding, building construction, concrete installations, asphalt installations, sandblasting, and painting, and failure investigations.

1. **Engineering Inspection and Investigation, Inc.** – Expert Witness in safety and investigated failures in buildings and structures.
2. **Inspection Consultants, Inc.** – Owner. Expert Witness in safety and investigated failures in buildings and structures.
3. **Popich Brother** – Offshore Supply vessel and passenger vessel operator in the Gulf of Mexico for the major oil companies.
4. **Space** – Worked as a contractor for various at the United States Department of Energy at the various Strategic Petroleum Reserve facilities in Louisiana and Texas. General construction, tank cleaning, pipeline, and equipment installation.
5. **L&L Construction** - Worked as a contractor for the United States Department of Energy at the various Strategic Petroleum Reserve facilities in Louisiana and Texas. General construction, electrical installation, pipeline, and equipment installation.
6. **Kaough & Jones** -Worked as a contractor for the United States Department of Energy at the various Strategic Petroleum Reserve facilities in Louisiana and Texas. General construction, electrical installation, pipeline, and equipment installation
7. **Kranco**-Worked as a contractor for the United States Department of Energy at the various Strategic Petroleum Reserve facilities in Louisiana and Texas. Crane installation, maintenance, and load testing.
8. **Garza Welding** – Provided welding, fabrication, pipeline installation, equipment installation, and repairs for the major oil companies in the Gulf of Mexico.
9. **T & A Wireline** – Offshore Wireline company and operated a portable well treatment barge.
10. **TBC Industries, Inc.** - Provided lease operators, riggers, crane operators, roustabouts, and roughnecks to some of the major oil companies for their production and drilling operations in the Gulf of Mexico.
11. **Rembco** - Worked as a contractor for the United States Department of Energy at the various Strategic Petroleum Reserve facilities in Louisiana and Texas.
12. **Foley Construction** - Worked as a contractor for the United States Department of Energy at the various Strategic Petroleum Reserve facilities in Louisiana and Texas.
13. **Delta Coatings** –Sandblasting and painting contractor who worked for most of the major oil companies in the Gulf of Mexico.
14. **Delta Temp Services** – A temporary labor provided for Longshoremen on the Mississippi River.
15. **Southern Environmental Control** – Operated a garbage container distributor for the Venice, LA area.
16. **Eagle Marine** – Vessel operator in the Gulf of Mexico
17. **American Marine**– Vessel operator in the Gulf of Mexico

18. **Mosby Enterprises –** Offshore construction company for the major oil companies in the Gulf of Mexico.
19. **Total Marine Services** – Shipyard and repair yard. Fabricated and repaired barges.
20. **Vela Garage** –Provided lawn care and vehicle maintenance for the offshore oil companies.
21. **Doomlar** – Dredging company
22. **Energy Drilling** – Drilling and workover company
23. **Grady Crawford**- Worked as a contractor for the United States Department of Energy at the various Strategic Petroleum Reserve facilities in Louisiana and Texas. Removed from service the Weeks Island Salt Doom facility.
24. **Guilliot Construction**- Worked as a contractor for the United States Department of Energy at the various Strategic Petroleum Reserve facilities in Louisiana and Texas.
25. **J & J Electric**- Worked as a contractor for the United States Department of Energy at the various Strategic Petroleum Reserve facilities in Louisiana and Texas.
26. **Taylormade Enterprises**- Worked as a contractor for the United States Department of Energy at the various Strategic Petroleum Reserve facilities in Louisiana and Texas.
27. **Apache Well Services** - Drilling and workover company
28. **U. S. Abatement –** Sandblasting and painting company working offshore for the major oil companies.
29. **Wescorp Construction**- Worked as a contractor for the United States Department of Energy at the various Strategic Petroleum Reserve facilities in Louisiana and Texas.
30. **Blake Drilling** – Drilling and workover company.

## SPECIAL SKILLS

Accepted as an expert in both Federal and State Courts. Trial, deposition, and case experience includes safety issues in the following fields of work: Welding safety, pipe laying safety, crane and rigging procedures, ladder safety, stairway safety, confined space entry, scaffolding safety, gangway safety, personnel net transfers safety, swing rope transfers safety, manual material handling safety, excavator/backhoe/industrial truck operation safety, watertight door safety, lock mooring safety, dock and wharf safety, production equipment safety, sandblasting and painting, fire prevention, hurricane evacuation procedures, mooring vessels safety, slip and fall safety, hand tools safety. Hand tool safety, machine guarding, personnel floatation devices.

Approved by the United States of America, Department of Energy as a qualified safety professional in construction and maintenance procedures. Placed on their site emergency safety task force team.

The companies I worked for or contracted with followed the Federal regulations listed below and voluntarily followed the Industry Standards of Care found below. As their safety officer, I was required to have a working knowledge of those regulations and standards of care and to apply them to the company's oil and gas exploration and production and marine activities.

## WORKING KNOWLEDGE OF FEDERAL REGULATIONS 29:

**1910 General Industry, 1926 Construction, 1915 Shipyard, 1918 Longshoring, 1919 Gear Certification**

**General Areas of Expertise for CFR 29 Labor Regulations**

**1910- GENERAL INDUSTRY AREAS OF EXPERTISE for all Subchapters Includes, but not limited to:** ladders, stairways, slippery conditions on walking and working surfaces, dockboards, scaffold, fall protection, fire prevention plans, powered platforms, vehicle-mounted elevating platforms, manlifts, ventilation, noise, compressed gases, storage and handling of liquefied petroleum gases, hazardous waste operations, process safety management, personal protective equipment (eye, face, respiratory, head, foot electrical, hand), sanitation, temporary labor camps, color codes for physical hazards, accident prevention signs and tags, permit-required confined spaces, control of hazardous energy (lockout/Tagout), medical services and first aid, fire brigades, fire extinguishers, firefighting extinguishing systems, firefighting training, powered industrial trucks, cranes and rigging, slings, machine guarding, hand and power tools, welding and cutting tools and equipment, electrical safety, diving operations safety, signs and labels, first aid,

**1915 - SHIPYARD:** cold work, hot work, mechanical paint removers, painting, flammable liquids, ventilation, welding and cutting, scaffolding, guarding of deck openings, access to vessels, access to dry docks, access to cargo spaces, working surfaces, ropes, chains, slings, shackles, hooks, chain falls hoisting and hauling equipment, qualification of operators. Powered industrial truck, portable electric and hand tools, abrasive wheels, internal combustion engines, ship's piping system, ship's deck machinery, portable air receivers, electrical circuits, fire safety plan, precautions for hot work, fire extinguishing systems, fire training,

**1917 – MARINE TERMINALS:** slinging, stacking of cargo, line handling, movement of barges and railcars, open fires, hazardous cargo, hazardous atmospheres, hazard communication, powered industrial trucks, vehicles, cranes and derricks, winches, conveyors, hand tools, guarding of edges, heights, platforms and skids, elevators and escalators, manlifts, ladders, stairways, illumination, guarding of hazards, machine guarding, welding and cutting, spray painting, compressed air, fuel handling and storage, battery charging,

**1918 – LONGSHORING:** gangways, Jacob's ladders, ladders, bridge plates, and ramps, access to barges, hatch covering, stowing cargo, open hatches, weather deck rails, barges, coaming clearances, hatch beams, and covers, winches and rigging, cranes, and rigging, mechanically powered vehicles, Hazard communication, Housekeeping, Illumination, Hazardous atmospheres and substances, Ventilation and atmospheric conditions, mooring barges, Hazardous cargo, Sanitation, Maintenance and repair work in the vicinity of longshoring operations, First aid and lifesaving facilities, Qualifications of machinery operators and supervisory training, Emergency action plans, personal protective equipment (eye, face, respiratory, head, foot electrical, hand),

**1926 – CONSTRUCTION**: Housekeeping, Illumination, Sanitation, Means of egress, noise, gases, vapors, fumes, dust, mists, process safety management, fire protection and prevention, fall protection, cranes and rigging, hand tools, powered hand tools, mooring barges, abrasive wheels, jacks, welding and cutting, electrical, scaffolding, material hoist, conveyors, pile driving, site clearing, marine operations, excavations, concrete construction, steel erection, underground construction, caisson, cofferdams, compressed air, demolition, stairways and ladders, diving, confined spaces, cranes and rigging, cold work, hot work.

**WORKING KNOWLEDGE OF FEDERAL REGULATIONS TITLE 46:**

**GENERAL AREA OF EXPERTISE FOR ALL SUBCHAPTERS, INCLUDES, BUT NOT LIMITED TO:**

Housekeeping, Illumination, Sanitation, Means of egress, noise, gases, vapors, fumes, dust, mists, process safety management, fire protection and prevention, fall protection, hand tools, powered hand tools, mooring barges, abrasive wheels, jacks, welding and cutting, electrical, scaffolding, material hoist, stairways and ladders, diving, confined spaces, cranes and rigging, cold work, hot work, sandblast and painting, non-skid paint application, watertight door design and use, mooring procedure, anchoring handling,..

**Subchapter C - Uninspected Vessels**

**Subchapter D – Tank Vessels:**

**Subchapter H – Passenger vessels**

**Subchapter I - Cargo and Miscellaneous Vessels**

**Subchapter I-A - Mobile Offshore Drilling Units: Cranes and rigging, personnel net transfers.**

**Subchapter K – Small Passenger Vessels: personnel net transfers and swing rope transfers.**

**Subchapter L – Offshore Supply Vessels: personnel net transfers and swing rope transfers.**

**Subchapter M – Towing Vessels: Making tow safety, winch handling.**

**Subchapter T – Small Passenger Vessels: personnel net transfers and swing rope transfers.**

**WORKING KNOWLEDGE OF FEDERAL REGULATIONS TITLE 33:**

**GENERAL AREA OF EXPERTISE FOR ALL SUBCHAPTERS INCLUDES, BUT NOT LIMITED TO:**

Welding and cutting safety, hot work, cold work, pipeline taps, fall protection, cranes and rigging, JSA, SEMS programs, hazard analysis, safe work procedures, slip and fall, non-skid paint application, walking and working surfaces, production equipment/piping installation, maintenance, sandblasting/painting, scaffolding, wireline, certain top side drilling activities, air tugger use, working from heights, stairways, ladders, guarding open holes, machine guarding.

**Subchapter N - Outer Continental Shelf Activities**

**WORKING KNOWLEDGE OF FEDERAL REGULATIONS TITLE 30:**

**GENERAL AREA OF EXPERTISE FOR ALL SUBCHAPTERS INCLUDES, BUT NOT LIMITED TO:**

Welding and cutting safety, hot work, cold work, pipeline taps, fall protection, cranes and rigging, JSA, SEMS programs, hazard analysis, safe work procedures, slip and fall, non-skid paint application, walking and working surfaces, production equipment/piping installation, maintenance, sandblasting/painting, scaffolding, wireline, certain top side drilling activities, air tugger use, working from heights, stairways, ladders, guarding open holes, machine guarding.

**Subchapter B - Offshore**

**WORKING KNOWLEDGE OF THE FOLLOWING INDUSTRY STANDARDS:**

(API) American Petroleum Institute
(ANSI) American National Standards Institute
(ASME) American Society of Mechanical Engineers
(AWS) American Welding Society
(CGA) Compressed Gas Associations, Inc.

(ASTM) American Society for Testing and Materials
(ABS) American Bureau of Shipping
(NFPA) National Fire Protection Association
(NIOSH) National Institute for Occupational Safety and Health
(SAE) Society of Automotive Engineers
(UL) Underwriters Laboratories
(NEC) National Electrical Code
(AWO) American Waterways Operators
(ISM) International Safety Management
(SSPC) Steel Structures Painting Council.

In-depth accident investigation and report preparation in support of litigation proceedings.

Safety auditing of fabrications, marine, and construction work to formulate safe work procedures concerning particularly hazardous jobs.

Gas freeing of platform piping and barges before the commencement of hot work.

Performance of Coast Guard and "ABS" hazard abatement surveys before the official certification inspection

Safety Management and control of H2S facilities.

Design of fire protection systems, (CO2 and foam) for marine vessels, pipe laying barges, derrick barges, and oil production facilities.

Training, formulation, and installation of a comprehensive **HAZARD ANALYSIS** program and **(JSA) JOB SAFETY ANALYSIS** program for accident prevention and accident investigation.

**EDUCATION**

Louisiana State University - September 15, 1964, through January 1, 1968
Major: Business Administration - Management

University of New Orleans - August 23, 1984, through December 10, 1984
Course Study: Psychology

Nicholls State University - August 8, 1985, through December 15, 1985
Course Study: Psychology & Safety.

**TECHNICAL AND SAFETY TRAINING**

1970 - Repair and Maintenance of Amerada Bottom Hole pressure gauges - Geophysical Research Corp. - Tulsa, OK.

1970 - Lease Automatic Custody Transfer (L.A.C.T.) Course - Amerada Hess Oil Company - Tulsa, OK.

1970 - Sandblasting and Painting of Tanks, Piping, etc. – Pittsburgh Paint Inc. - Bloomington, TX.

1970 - Supervising for Safety - One Year Home Study Course – National Safety Council.

1971 - Multi-Media First Aid course - American Red Cross - Tulsa, OK.

1971 - Multi-Media Instructor's Course - American Red Cross - Lafayette, LA.

1971 - Electrical Safety Marine & General Industry - National Electrical Code.

1972 - Industrial Fire Fighting School - Fire Prevention Engineer, Hess Oil Company - Tulsa, OK.

1972 - Confined Space Safety Course - Frank K. Lightfoot CSP - Tulsa, OK.

1973 - Key Man Development Course - National Safety Council - Lafayette, LA.

1973 - Competent Person Course - U.S. Department of Labor - OSHA Lafayette, LA.

1973 - Noise & Hearing Conversation Seminar - Acadian Safety Association - Lafayette, LA.

1973 - Federal Register (OSHA) 1926 as it relates to the oil and Gas Industry - OSHA - Lafayette, LA.

1974 - Offshore Safety Practices - Frank K. Lightfoot CSP - Tulsa, OK.

1974 - Vessel and Tank Entry Procedures - Frank K. Lightfoot CSP - Tulsa, OK.

1974 - Respiratory Protection Course - Scott Air, Inc. - Tulsa, OK.

1974 - Safety Procedures - Hydrogen Sulfide Facilities - Frank K. Lightfoot CSP - Laurel, MS.

1974 - Water Transportation - Frank K. Lightfoot CSP - Lafayette, LA.

1974 - Fire Prevention/Fire Fighting Course - Oil Storage Tanks – Fire Prevention Engineer, Hess Oil Co., and Frank K. Lightfoot CSP. Tulsa, OK.

1974 - Personal Protective Equipment Course - Frank K. Lightfoot CSP - Lafayette, LA.

1975 - Hydrogen Sulfide (H2S) Training Course - Frank K. Lightfoot CSP Laurel, MS.

1976 - CPR Course - American Heart Association - Harvey, LA.

1976 - CPR Instructor's Course - Delgado College - New Orleans, LA.

1977 - Maritime Safety Course - Delgado College - New Orleans, LA.

1979 - Hearing & Noise Seminar - Port Authority - Singapore.

1985 - Safety Management - Nicholls State University - Thibodaux, LA.

1988 - Defensive Driving Instructor - Hartford Insurance Company

1989 - CSP Preparation Course - USF&G Insurance Company.

1989 - Crane Certification Course - Northshore Crane & Equipment, Inc.

1991 - Crane and rigging safety course - Baton Rouge Chapter of the National Safety Council.

1992 - Mine Entry Safety Survival - Weeks Island, La - U. S. Department of Energy - Strategic Petroleum Reserve

1992 - Bloodborne pathogen standard -Baton Rouge Chapter of the National Safety Council.

1992 - National Safety Council First Aid and CPR - New Orleans Chapter of the National Safety Council.

1993 - Permit Required Confined Space - Weeks Island, La - U. S. Department of Energy - Strategic Petroleum Reserve

1998 - OSHA BASIC SAFETY PLUS - Kenner, LA - G.N.O.I.E.C.

1999 - OSHA HAZWOPER - Baton Rouge, LA - Baton Rouge Safety Council

1999 - Crane Operator Certification Course - Weeks Island, Louisiana - United States Department of Energy - Rico Crane, Inc.

2002 - OSHA 500 COURSE - Baton Rouge, LA - Baton Rouge Safety Council

2004 - API conference on SEMP, rigging & fall Protection Safety – Houston, Texas – American Petroleum Institute.

2005 - Fundamentals of Rigging – API RP 2D - New Iberia, Louisiana – The Crosby Group, Inc. – American Petroleum Certified course.

2005 – Train the Trainer – API RP 2D - New Iberia, Louisiana – The Crosby Group, Inc. – American Petroleum Certified course.

2005 – OSHA 10-HOUR CONSTRUCTION TRAINING – CLICKSAFETY, Inc. – OSHA-approved safety course for construction sites – Course required by United States Department of Energy.

2023 – MOXIE MEDIA PERSONNEL NET TRANSFER COURSE.

**SAFETY LITERATURE**

The following safety literature was provided to various oil companies and/or governmental institutions in Indonesia, the Philippines, Thailand, and Brunei. This material was reviewed, approved, and incorporated into the various safety regulations governing the oil and gas industry.

Marine operations safety manuals - included pipe-laying barges, derrick barges, jet barges, crane barges, supply barges, dredges (bucket and suction), tugboats, and supply boats.

Fabrication yard operations safety manuals - included cranes, rigging rope and wire rope, scaffolding, personal protective equipment, welding operations, and working from heights, etc.

Safe Work Procedure manuals, derived from Job Safety Analyses performed on particularly hazardous jobs, - included welding, working from heights, various forms of egress/ingress in marine operations, and material handling operations (manual, cranes, mechanical equipment, etc.).

Water Transportation Safety procedures - included emergency equipment use, life-saving equipment use, maintenance of equipment, duties of the Captain, and support personnel during egress/ingress operations and cargo transfer.

Emergency Evacuation procedures - included abandon ship drills, fire onboard drills, oil/gas well blow-out evacuations, military unrest.

Expatriation of a Deceased Employee – procedures included the necessary tests and exams required to expedite proceedings.

Confined Space Safety Procedures - Markel Wet Drift - Weeks Island, La - U. S. Department of Energy - Strategic Petroleum Reserve

**INSTRUCTOR/GUEST LECTURER**

Instructor/Guest Lecturer at Delgado College for a special series of courses dealing with marine Safety. My section covered the safe work procedures in the use of cranes, wire rope, slings, and rigging.

Guest Lecturer at a special meeting of the American Welding Society. The meeting's agenda dealt with the Engineer and Architect's responsibility towards safety in the fabrication and installation of structural steel.

Instructor/Guest Lecturer at the University of New Orleans (downtown).Paralegal studies concerning accident investigation and expert testimony.

Lafayette Paralegal Association – "ACCIDENT INVESTIGATION"

Instructor Multi-Media First Aid and CPR.

Instructor in Fire Fighting and Fire Prevention.

Instructor for respiratory protection and the use of fresh air breathing equipment (tank, vessel, and hydrogen sulfide facility entry).

Trained three Singapore nationals and an Indonesian nationalist in Safety Management and Safety methods.

Taught short courses and held safety meeting in:

Material handling (manual and mechanical) - included cranes, rigging, lifting, transport, forklifts, elevators, conveyors, etc.

Personal Protective Equipment: head, face, eyes, hearing, hands, feet, and respiratory.

Water, air, and land Transportation Safety Procedures.

**WORK EXPERIENCE**

**January 1, 1994, to Present**

**Total Safety Services - Harvey, LA**

Job Description: President

To offer contract safety programs to the oil and gas industry, and litigation support for accidents involving personal injury to the legal community.

**September 25, 1987, to 1997**

**Contract Safety Consultants - Marrero, LA**
**President**

Job Description: President

To offer contract safety programs to the oil and gas industry, and litigation support for accidents involving personal injury to the legal community. Test and certify candidates in safe rigging techniques, crane operations, and over-the-water transfers (swing rope and personnel basket).

**November 1986 to September 25, 1987**

**Engineering Inspection and Investigation, Inc., New Orleans, LA**

Job Description:

Employed as a safety consultant. Duties included investigating personal injury cases, researching the applicable codes and regulations, and providing a comprehensive report in preparation for litigation proceedings.

**December 1985 to November 1986**

**Gulf South Laboratories, Inc. - New Orleans, LA**

Employed as a fireproofing, welding, sandblasting, and painting inspector. My duties included the inspection of various construction sites to assure the customer that the building and safety specifications associated with the job were being met. Weekly reports were written confirming the inspection services provided.

Experience:

Responsible for the welding and sandblasting/painting operations performed in conjunction with the building of Pumping Station No. 13 for Jefferson Parish. Assisted the field engineer in his project management activities.

Fireproofing investigator for the U.N.O. Assembly Center.

Welding & Fireproofing inspector for the construction of the Waggaman Elementary School.

Fireproofing inspector of Doctor's Hospital.

Fireproofing inspector for three elementary schools in Jefferson Parish.

Welding inspector and water tower investigator for the U.S. Navy Base - Algiers.

Hydrostatically tested gas pipelines for Louisiana Gas Service.

Inspector for the repair and painting operations of the fifteen high-rise water towers located throughout Jefferson Parish. These water towers were repaired, sandblasted, and painted.

Inspector for the porcelain finished traffic control signs (built and coated in California) for the New Orleans International Airport.

Inspector for the sandblasting/painting operations associated with the coating of sewerage treatment plants in Avondale, LA, Morgan City, LA, and LaPlace, LA.

**August 1985 to December 1985**

**College:**

Attended Nicholls State University and worked as a security guard in a fabrication yard and a counselor for teens at the Lafourche Parish Justice Facility.

**February 1985 to May 1985**

**Inspection Consultants, Inc. - New Orleans, LA**

Job Description: Vice President

As a safety consultant and part-owner, my duties included the installation of safety programs for the industrial customer, accident investigation, and safety audits. Safety manuals were produced to provide a workable safety program for the customers.

**July 1983 to February 1985**

**Gulf South Laboratories, Inc. - New Orleans, LA**

Job Description:

Same as above.

**July 1978 to March 1982**

**McDermott, Inc. - (South East Asia Group) - Singapore**

Company Description:

McDermott, Inc. was the largest offshore construction company in the world. The southeast Asia Group operated between Japan and Australia and consisted of a fabrication yard on Batom Island in Indonesia, the Jurong Yard in Singapore, and the Marine and Diving Divisions.

The Batom Fabrication yard was considered the largest in that area and employed over 2,300 nationals and expatriates; its function was the fabrication of offshore platforms, barges, boats, drilling rigs, and other oil-related equipment.

The Jurong Yard was mostly used for support purposes but did do some small fabrication work. The Marine Division consisted of three center slot pipe-laying barges, one crane barge, two jet barges, one derrick barge, and various supply and tug boats.

The Diving Division performed salvage work, subsurface tie-ins, and completed underwater well installations.

Job Description:

Employed as the manager of the Safety Department for the South East Asia Group. Managerial duties included the supervision of the Workmen Compensation Department, which consisted of two employees and the Medical Department (eighteen Filipino doctors and one American medic), and four nationals.

Administrative Duties:

The installation of an American-type safety program in this area. As the workforce consisted of various nationalities, the safety manuals, safe work procedures, accident reports, etc. had to be translated and published into six different languages.

Significant Safety Duties included:

To apply on-the-job training techniques to the national safety personnel in safety management procedures.

To act as a liaison between the management of McDermott, Inc., and officers of various oil companies and countries concerning safe work practices associated with the oil and gas industry in their areas.

To supervise all air and sea rescues.

To evaluate new work locations and to set up emergency evacuation procedures for our personnel.

To provide safety information to the various companies and countries for their review and approval.

To install safe work procedures for hazardous jobs.

To supervise the gas freeing of production platforms before hot work commences.

To assist in the design of fire-fighting, and prevention equipment on our vessels, barges, and projects.

Achievements:

The Batom Fabrication yard was the only yard in the far east to successfully fabricate the Indonesian-designed "Tin Dredge" without it catching fire and being destroyed. Due to the coating of the various material carrying shoots, the barge would catch fire and burn when exposed to any cutting or burning operations. An automatically activated foam system was designed for use during its fabrication and a continuous fire watch was devised and employed for the 24 hours a day, six-month job.

**April 1976 to July 1978**

**McDermott, Inc. (Marine Pipeline and Diving Division) - Harvey, LA**

Job Description: Safety Supervisor - Marine Pipeline and Diving Divisions

Company Description:

The Marine Pipeline Division then considered the best and largest in the United States, consisted of three large pipe-laying barges, one derrick barge, two jet barges, and a variety of tugs, supply boats, and crew boats. The Diving Division worked off these barges and vessels and therefore came under the same safety rules and regulations. Both employed approximately 1,500 persons of various crafts and performed the same type of work as their counterparts did in the South East Asia Group.

Administrative Duties:

Co-authored a new Safety manual, Medics Manual, and started a Safe Work Procedure Manual. This manual would be an ongoing project taken from the Safety Job Analysis reports performed on various aspects of our work. A new Safety Awards Program was started, and a New Employee Indoctrination Program and pre-employment. Hearing and Physical exams were initiated. A new computer analysis program was developed to evaluate our accident statistics, and new accident report procedures were installed to go along with it.

Safety Duties:

Holding monthly safety meetings aboard each piece of equipment, investigating accidents, holding abandon ship drills, monitoring the safety awards program, and supervising gas freeing operations on barges and platforms before the commencement of hot work.

Achievements:
The largest and deepest (1,200 foot) offshore platform in the world was towed and set on location by my division during my employment without sustaining a single lost-time accident.

**September 1970 to April 1976**

**Amerada Hess Corp. - Lafayette, LA**

Company Description:

Amerada Hess Oil Company was the sixth largest independent oil company in the world. The Lafayette Region consisted of eight oil and gas production fields located from Como, Texas to Laurel, MS., and employed some 900 workers. There were two manned offshore production and storage platforms and two manned inland-water oil production and storage facilities; the other four locations were land-based.

Job Description:

Initially hired as a Production Technician, my duties included wireline work, supervising the installation of pipelines, and piping, all types of gauge repairs, oil and gas production measurements, and general maintenance work.

To establish a Corporate Safety Department, six employees throughout the United States and Canada were promoted to Safety Representatives. An extensive safety-training program was started and headed by the Corporate Safety Manager, Mr. Frank K. Lightfoot, CSP. Mr. Lightfoot was the former chairman of the oil and gas section of the National Safety Council.

Safety Duties:

Traveling to the eight oil and gas production fields and holding monthly safety meetings, investigating accidents, teaching first aid courses, making safety inspections, auditing safe work procedures, and supervising the testing of oil storage tanks for oxygen or flammables before hot work commencement.

Achievements:

The Lafayette Region was the first and only region to go for one full year without a lost-time accident during my employment. The management presented the region with a special awards banquet and was praised in the company's Safety newsletter.

**June 1969 to July 1970**

**Indel, Inc. - New Orleans, LA**

Job Description:

Manager of the New Orleans Branch. Sold, rented, and repaired Amerada Bottom Hole pressure equipment. Sold computer tape, disc packs, and other computer supplies. Sold photo-recording supplies, as Indel, Inc. was a distributor for Kodak and Dupont.

Experience:

Supervised the performance of Reservoir Limits Tests offshore. Using the Amerada Bottom Hole Pressure Gauge, the extent and amount of oil reserves were measured and calculated.

**March 1968 to June 1969**

**Smith Wallender Wireline - Harvey, LA**

Job Description:

Employed as a wireline operator offshore. Performed bottom hole pressure surveys and well completions; changed out gas lift valves and subsurface safety valves.

## DISCLOSURE OF EXPERT TESTIMONY

1 BOBBY MOREE V. SOUTHERN SHIPBUILDING CORP.
YEAR: 1992
COURT: US DISTRICT - EASTERN DISTRICT - NEW ORLEANS, LA - JUDGE SCHWARTZ
PLAINTIFF: UNGAR & BYRNE

2 JOHN E. JORDAN V. INTERCONTINENTAL BULKTANK CORP
YEAR: 1990
COURT: 18 JUDICIAL DISTRICT COURT - PORT ALLEN, LA
PLAINTIFF: TERRY BELL

3 ROBERT S. BOWMAN, JR. V. PAN AM WORLD SERVICES, INC.
YEAR: 1989
COURT: US DISTRICT - EASTERN DISTRICT, NEW ORLEANS, LA - JUDGE SCHWARTZ
DEFENSE: JONES WALKER

4 LEROY DARDAR, JR V. CONOCO, INC & ABC CRANE COMPANY
YEAR: 1992
COURT: US DISTRICT - EASTERN DISTRICT, NEW ORLEANS, LA - JUDGE MINTZ, JR.
PLAINTIFF: HAROLD WHEELAHAN

5 GLENN W. D. GRAY V. TEXACO, INC.
YEAR: 1991
COURT: STATE COURT, CAMERON, LOUISIANA - JUDGE FONTENOT
PLAINTIFF: J.B. JONES

6 LINDSEY FRANCIS V. JOHN E. GRAHAM & SONS
YEAR: 1991
COURT: STATE COURT, CAMERON, LOUISIANA - JUDGE FONTENOT
DEFENSE: HUNTER LUNDY

7 AUDREY D. FAUCHEAUX V. TERREBONNE PARISH CON.
YEAR: 1990
COURT: 32 TH JUDICIAL DISTRICT COURT - PARISH OF TERREBONNE - JUDGE: FALLON
DEFENSE: DUVAL, FUNDERBURK

8 U.S. ABATEMENT VS. MOBIL EXPLORATION & PRODUCING, USA
YEAR: 1993
COURT: US DISTRICT COURT - EASTERN DISTRICT - NEW ORLEANS, LA - BANKRUPTCY COURT JUDGE BROWN
DEFENSE:

9 LARRY SAMPSELL V. B&I WELDING SERVICES, INC
YEAR: 1993
COURT: 25 TH JUDICIAL DISTRICT COURT - PLAQUEMINES, LA - JUDGE KIRBY
PLAINTIFF: GEORGE NALLY

10 C. RAVEN BENOIT VS. CRAIN BROS, INC.
YEAR: 1994
COURT: STATE COURT, CAMERON, LOUISIANA - JUDGE FONTENOT
PLAINTIFF: J.B. JONES
.
11 LEON HUVAL VS. C.F. BEAN CORPORATION
YEAR: 1994
COURT: FEDERAL COURT, LAFAYETTE, LA - JUDGE REBECCA DOHERTY
PLAINTIFF: MORROW & MORROW

12 RICKY LINTON, VS. GREAT LAKES DREDGE & DOCK CO.
YEAR: 1994

COURT: STATE COURT, HARRIS COUNTY- JUDGE JOHNSON
DEFENSE: HUNTER LUNDY

.

13 RICHARD VIATOR VS. GORDON'S TRUCKING, CO.
YEAR: 1994
COURT: UNITED STATES DISTRICT COURT LAFAYETTE
DEFENSE: GOLEAMINO

14 BRANDON DESHOTEL VS. KMART CORP.
YEAR: 1994
COURT: UNITED STATES DISTRICT COURT - EASTERN DISTRICT
DEFENSE: JONES WALKER

15 GEORGE BRANIFF VS. BLUE STREAK
YEAR: 1994
COURT: 24 TH JUDICIAL DISTRICT COURT
PLAINTIFF: TERRY BELL

16 CHARLES PALOMBO VS. CAMERON OFFSHORE BOATS, INC.
YEAR: 1995
COURT: WESTERN DISTRICT LAKE CHARLES
DEFENSE: VERRON

17 JAMES WALKER VS. MOBIL OIL CORP.
YEAR: 1995
CASE NO: 94 C 305
COURT: NORTHERN DISTRICT OF ILLINOIS -JUDGE ROBERT W. GETTLEMAN
PLAINTIFF:

18 CHARLES BOUQUE VS. CHEVRON
YEAR: 1995
COURT: UNITED STATES DISTRICT COURT LAFAYETTE
DEFENSE:

19 PATRICIA PICOU VS. DIAMOND REEF SEAFOOD
YEAR: 1999
COURT: 15 TH JUDICIAL DISTRICT COURT - JUDGE COX
PLAINTIFF: JOHN JAY

20 WILLIAM BREAUX VS. LOUISIANA MACHINERY CO., ET AL
YEAR: 1998
COURT: FOURTH JUDICIAL DISTRICT COURT - JUDGE BECHNEL
PLAINTIFF: GIBBY ANDRY

21 CARROLL BOUDREAUX VS. U.S.A. & BAY MANAGEMENT
YEAR: 2000
COURT: US DISTRICT - EASTERN DISTRICT - NEW ORLEANS, LA - JUDGE BERRIGAN
PLAINTIFF: UNGAR & BYRNE

22 BILLY GILPATRICK VS. ENSCO OFFSHORE COMPANY
YEAR: 2000
COURT: FIFTEENTH JUDICIAL DISTRICT COURT - JUDGE RUBIN
PLAINTIFF: GILPATRICK

23 CHICK KIM CHOO VS. EXXON
YEAR: 2000
COURT: FEDERAL COURT IN HOUSTON: JUDGE BELSON
PLAINTIFF: CHARLES MUSSCLEWHITE

24 DALE J. ESTAY VS. TERMINAL STEVEDORES, INC.
YEAR: 2000
COURT: 29 TH JUDICIAL DISTRICT COURT - PARISH OF ST. CHARLES - JUDGE: ROBERT CHIASSON
DEFENSE: JONES WALKER

25 U. V. JEAN MOTT VS. FALCON DRILLING COMPANY, INC.
YEAR: 2000
COURT: 32 TH JUDICIAL DISTRICT COURT - PARISH OF TERREBONNE - JUDGE: WALKER
PLAINTIFF:

26 WENDELL BYRD VS. ROWAN COMPANIES, INC.
YEAR: 2001
COURT: 16 TH JUDICIAL DISTRICT COURT PARISH OF ST. MARY - JUDGE: SIMMONS
PLAINTIFF: ELWOOD STEVENS

27 RONALD DICKEY VS. TAIRA LYNN MARINE.
YEAR: 2001
COURT: 34 TH JUDICIAL DISTRICT COURT PARISH OF ST. BERNARD - JUDGE: BUCKLEY
PLAINTIFF: RONNIE PENTON

28 JAMES DAGGS VS. GULF ISLAND CONTRACTORS, INC.
YEAR: 2001
COURT: 32 TH JUDICIAL DISTRICT COURT PARISH OF TERREBONNE
JUDGE: WIMBISH
PLAINTIFF:

29 KEVIN AMOS AND JENNIFER AMOS VS. NABORS OFFSHORE CORPORATION.

YEAR: 2002
COURT: US DISTRICT - EASTERN DISTRICT - NEW ORLEANS, LA - JUDGE THOMAS G. PORTEOUS, JR.
PLAINTIFF: ST. MARTIN & WILLIAMS

30 MARY ANN BUTEAUX VS. R & B FALCON
YEAR: 2002
COURT: 32 TH JUDICIAL DISTRICT COURT PARISH OF ST. TERREBONNE
JUDGE: WALER
DEFENSE: DUVAL, FUNDERBURK

31 TODD AUCOIN VS. CAL DIVE INTERNATIONAL, INC.
YEAR: 2002
COURT: 16TH JUDICIAL DISTRICT COURT, PARISH OF ST. MARY
JUDGE: LEONARD
PLAINTIFF: DAVID PARISOLA

32 TERRY LYNN HAYLES VS. SONAT EXPLORATION CO.
YEAR: 2002
COURT: CIVIL DISTRICT COURT, PARISH OF ORLEANS
JUDGE: DIROSA
DEFENSE: LISKOW & LEWIS

33 JUAN LOPEZ VS. MARINE DRILLING COMPANY ET AL
YEAR: 2002
COURT:15 TH JUDICIAL DISTRICT COURT PARISH OF VERMILION
JUDGE: BROUSSARD
PLAINTIFF: GEORGE FLOURNEY

34 JERRY P. HELMER VS. F & B FALCON
YEAR: 2002
COURT:16 TH JUDICIAL DISTRICT COURT PARISH OF ST. MARY
JUDGE: PORTER
DEFENSE: DUVAL, FUNDERBURK

35 AARON J. NOEL VS. DIAMOND OFFSHORE DRILLING, INC.
YEAR: 2003
COURT: UNITED STATES DISTRICT COURT - HOUSTON, TEXAS
JUDGE: SIM LAKE
PLAINTIFF: BLAKE JONES

36 ODILON CHACHA COTO, ET AL VS. J. RAY MCDERMOTT, S. A. ET AL
YEAR: 2003

COURT: CIVIL DISTRICT COURT, PARISH OF ORLEANS
JUDGE: MARVIN GAHAGAN
PLAINTIFF: JOHN O'QUINN

37 ABEL RODULPHO ESQUIVEL, ET AT VS. KELLOGG BROWN & ROOT, INC.
YEAR: 2003
COURT: 190 TH JUDICIAL DISTRICT, HARRIS COUNTY, TEXAS
JUDGE: JENNIFER ELROD
PLAINTIFF: JOHN O'QUINN

38 ANTHONY F. DIXON VS. MORENO ENERGY MARINE, INC.
YEAR: 2003
COURT: 38 TH JUDICIAL DISTRICT COURT, PARISH OF CAMERON
JUDGE: FONTENOT
DEFENSE: WOODLEY WILLIAMS

39 TERRELL PARFAIT VS. TRANSOCEAN & SHELL
YEAR: 2004
COURT: CDC NEW ORLEANS
JUDGE: ROBIN GIARRUSSO
PLAINTIFF: ST MARTIN & WILLIAMS

40 ROBERT MCINNIS VS. PARKER DRILLING
YEAR: 2004
COURT: CIVIL DISTRICT COURT, PARISH OF ORLEANS
JUDGE: ROBIN GIARRUSSO
DEFENDANT – MR. JEFFERSON TILLERY & MR. LEE STRAYHAN

41 DUPLECHIN VS. DUPHIL, INC.
YEAR: 2004
COURT: 38 TH JUDICIAL DISTRICT COURT, PARISH OF CAMERON
JUDGE: FONTENOT
TYPE OF TESTIMONY: TRIAL
PLAINTIFF – KEVIN DUCK – DUCK LAW FIRM

42 GUILLORY VS. SEA MAR MANAGEMENT, INC.
YEAR: 2006
COURT: 16 JUDICIAL DISTRICT, PARISH OF IBERIA
JUDGE: COMEAUX
DEFENSE – WILLIAM BASS – VOORHIES & LABBE

43 JONES VS. PRODUCTION MANAGEMENT, CHEVRON, HOUMA INDUSTRIES
YEAR: 2006

COURT: EASTERN DISTRICT FEDERAL COURT
JUDGE KURT D. ENGELHARDT
PLAINTIFF ED SHERMAN

44 CEDRIC NICHOLS VS. WEEKS MARINE, INC. ET AL
YEAR: 2006
COURT: EASTERN DISTRICT FEDERAL COURT
JUDGE ELDON E. FALLON
PLAINTIFF: RANDY UNGAR

45 GRAYLING VITAL VS. COASTAL CATERING, LLC
YEAR: 2008
COURT: EASTERN DISTRICT FEDERAL COURT
JUDGE A. J. McNAMARA
PLAINTIFF: DARLENE JACOBS & AL SARRAT

46 ROBERT C. BAUCOM VS. SISCO STEVEDORING, LLC, WARRIOR & GULF
YEAR: 2008
COURT: SOUTHERN DISTRICT OF ALABAMA
JUDGE: WILLIAM STEELE
PLAINTIFF: LOUIS ST. MARTIN

47 TRACY COMMINGS VS. MIKE HOOKS, INC.
YEAR: 2008
COURT: EASTERN DISTRICT OF LOUISIANA
JUDGE JAY ZAINEY
PLAINTIFF: JOE GUIDRY

48 ROZMARYNOSKI VS. J. RAY MCDERMOTT
YEAR: 2008
COURT: CIVIL DISTRICT COURT, PARISH OF ORLEANS
JUDGE: DAROSA
CLIENT: PLAINTIFF: MR. JOHN O'QUINN & MR. CHARLIE MUSSCLEWHITE

49 JAMES JOSEPH VS. OMEGA PROTEIN, INC.
YEAR: 2008
COURT: EASTERN DISTRICT OF LOUISIANA
JUDGE: LANCE AFRICK
CLIENT: PLAINTIFF: MR. WILLIAM GEE & LARRY CURTIS

50 DAVID LITTETON VS. TRANSOCEAN OFFSHORE DEEPWATER DRILLING, INC.
YEAR: 2009
SOUTHERN DISTRICT OF MISSISSIPPI

JUDGE: DANIEL P. JORDAN III
PLAINTIFF: CHRIS ERNY

51 STEVEN E. KUITHE VS. GULF CARIBE MARIMINE, INC.
YEAR: 2010
SOUTHERN DISTRICT OF ALABAMA
JUDGE: WILLIAM H. STEELE
PLAINTIFF KEN JACQUES & LOUIS KOERNER

52 TYNIRSHA W. RHINE VS. BAYOU PIPE COATING, INC.
YEAR: 2010
16TH JUDICIAL DISTRICT COURT, PARISH OF NEW IBERIA
JUDGE: GERARD B. WATTIGNY
PLAINTIFF KEN JACQUES & LOUIS KOERNER

53 BRAD BOUTIN VS. NEWFIELD EXPLORATION CO.
YEAR: 2010
WESTERN DISTRICT OF LOUISIANA
MAG. JUDGE HILL
PLAINTIFF: DeGRAVELLES, PALMINTIER, HOLTHAUS & FRUGE LLP

54 LEONARD GOTCH VS. TRANSOCEAN, INC.
YEAR: 2011
25TH JUDICIAL DISTRICT COURT - PLAQUEMINES
JUDGE: KEVIN CONNER
PLAINTIFF: BLAKE JONES

55 ERIC VINCENT OWENS VS. ABDON CALLAIS OFFSHORE, LLC
YEAR: 2011
EASTERN DISTRICT OF LOUISIANA
JUDGE: SARAH S.VANCE
PLAINTIFF: KRISTI POST

56 KENNY CHOATE VS. ALLIS-CHALMERS TUBULAR
YEAR: 2011
42nd JUDICIAL DISTRICT COURT
DESOTO PARISH, LOUISIANA
JUDGE CHARLES ADAMS
PLAINTIFF: MR. SCOTT J. CHAFIN, JR – GREGORIO, GREGORIO & PAYNE

57 RUSSELL DESELLE, JR. VS. LAREDO CONSTRUCTION, INC. ET AL
YEAR: 2012
WESTERN DISTRICT OF LOUISIANA

JUDGE: HAIK
PLAINTIFF: MR. AARON ALLEN – MOTT & ALLEN

58 TROY ESTELLE VS. WEST END MARINE, INC. SANDRIDGE OFFSHORE, LLC
YEAR: 2112
16TH JUDICIAL DISTRICT COURT, PARISH OF ST. MARY
JUDGE: JAMES R. McCLELLAND
PLAINTIFF: MR. DAVID AND JEANNE LABORDE – LABORDE LAW FIRM

59 SCOTT DELAHOUSSAYE VS. PISCES ENERGY
YEAR: 2012
EASTERN DISTRICT OF LOUISIANA
JUDGE: JANE TRICHE MILAZZO
PLAINTIFF: MR. DAVID BATEMAN

60 JESSICA SIMON VS. LEGACY OFFSHORE LLC
YEAR: 2013
23RD JUDICIAL DISTRICT COURT – PARISH OF ASSUMPTION
JUDGE: RALPH TUREAU
PLAINTIFF: HERMAN, HERMAN, KATZ & COTLAR: MR. JED CAIN
.
61 CHARLES PAES VS ROWAN COMPANIES, INC
YEAR: 2013
EASTERN DISTRICT OF LOUISIANA
JUDGE: LANCE AFRICK
PLAINTIFF: MR. TIM YOUNG

62 ROSARIO CHERMIE VS CALLAIS & SONS, LLC
YEAR: 2013
EASTERN DISTRICT OF LOUISIANA
JUDGE: KURT D. ENGELHARDT
PLAINTIFF: MS. KRISTI POST

63 JASON THOMAS VS. SHELL OIL COMPANY
YEAR: 2013
MEDIATION JUDGE: A. J. KROUSE
PLAINTIFF: MR. LARRY BEST

64 ERNEST GUIDRY VS. ABC INSURANCE TANNER & ENERGY 21
YEAR: 2015
27TH JUDICIAL DISTRICT COURT PARISH OF ST. LANDRY
JUDGE: JAMES DOHERTY, JR
PLAINTIFF: MR. BLAKE DAVID

65 RONALD BIBBINS, SR VS. CONSOLIDATED GRAIN & BARGE, INC.
YEAR: 2015
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
JUDGE: IVAN L.R. LEMELLE
MAGISTRATE JUDGE: MARY ANN VIAL LEMMON
PLAINTIFF: MS. KRISTI POST

66 RICHARD PRICE VS. GREAT LAKES DREDGE & DOCK COMPANY, LLC
YEAR: 2015
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
JUDGE: LANCE AFRICK
MAGISTRATE JUDGE: ROBY
DEFENSE: JONES WALKER, JEFFERSON TILLERY

67 JASON DEROUEN VS. HERCULES LIFTBOAT COMPANY, LLC, Y&S MARINE, INC. ET AL
YEAR: 2015
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
JUDGE: FALLON
MAGISTRATE JUDGE: SHUSHAN
DEFENSE: STAINS, EPPLING, JASON KENNY, TONY STAINS

68 BRAD HEBERT VS. MAINTENANCE ENTERPRISES, INC.
YEAR: 2016
18TH JUDICIAL DISTRICT COURT
PARISH OF IBERVILLE
STATE OF LOUISIANA
DIVISION D
PLAINTIFF: SAUNDERS & CHABERT - SCOTTY CHABERT

69 ATLANTIC SOUNDING, CO, INC VS. JESSICA R. SMITH
YEAR: 2016
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
JUDGE: MILAZZO
MAGISTRATE JUDGE: NORTH
PLAINTIFF: THE YOUNG LAW FIRM - MS. MEGAN MISKO

70 STEVE GRANGER, IV VS. BISSO MARINE, LLC
YEAR: 2016
UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA
JUDGE: FALLON
MAGISTRATE JUDGE: KNOWLES
PLAINTIFF: LAMOTHE LAW FIRM, LLC - MR. RICHARD MARTIN

71: BRAYTON BAYARD VS. CAMERON, INC.
YEAR: 2018
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION
JUDGE: REBECCA DOHERTY
MAG. JUDGE CAROL WHITEHURST
PLAINTIFF: JEROME H. MOROUX – BROUSSARD & DAVID, LLC

72: RORY CASTILLE VS APACHE CORP
YEAR: 2018
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION
JUDGE: REBECCA DOHERTY
MAG. JUDGE CAROL WHITEHURST
DEFENSE: JEFFERSON TILLERY – JONES WALKER

73: MARCUL LOMAX VS. MARQUETTE TRANSPORTATION
YEAR: 2018
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
JUDGE: JANE TRICHE MILAZZO
MAG. JUDGE KAREN WELLS ROBY
PLAINTIFF: MS. KRISTI POST – BLAKE JONES LAW FIRM

74: JOHNNY DEAN, SR VS. SEA SUPPLY, INC.
YEAR: 2018
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
JUDGE FALLON
MAG. JUDGE KNOWLES
DEFENSE: JEFFERSON TILLERY – JONES WALKER

75: DEVIN BARRIOS VS. CENTAUR, LLAC
YEAR: 2018
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JUDGE: JANE TRICHE MILAZZO
PLAINTIFF: JOSEPH WAITZ – WAITZ & DOWNER

76: GARY ROBIN VS. WEEKS MARINE, INC.
YEAR: 2018
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
JUDGE SUSIE MORGAN
PLAINTIFF: RYAN LUMINAIS – SHER, GARNER, CAHILL, RICHTER, KLEIN & HILBERT

77: JEFFERY MCCARTY VS. ENTERPRISE MARINE SERVICES, LLC
YEAR: 2019
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
JUDGE SUSIE MILAZZO
PLAINTIFF: JOSEPH B. MARINO, III - THE YOUNG FIRM

78: RYAN R. KINNERSON VS. ARENA OFFSHORE, LP, SPARROW OFFSHORE, LLC
YEAR: 2019
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
JUDGE: FALLON
PLAINTIFF: TOM EDWARDS, DOMENGEAUX, WRIGHT, ROY & EDWARDS

79: ALEX VARGAS VS MANSON GULF, LLC, C&G WELDING, INC.
YEAR: 2020
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
JUDGE: BARRY W. ASHE
PLAINTIFF: MR. PATRICK DENNIS & MR. MARK DOYLE - DOYLE LLP

80:WAYNE C. RAYMOND VS. MARINE TRANSPORTATION SERVICES, INC. ET AL
YEAR: 2020
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
JUDGE: MICHAEL J. JUNEAU
PLAINTIFF: MR. BLAKE DAVID

81: JEFFREY L. SOUDELIER, JR VS. PBC MANAGEMENT, INC., FLORIDA MARINE TRANSPORTERS
YEAR: 2021
29TH JUDICIAL DISTRICT COURT - PARISH OF ST. CHARLES, STATE OF LOUISIANA
JUDGE: CONNIE M. AUCOIN
DEFENSE: JASON KENNY – STAINS, EPPLING & KENNY

82: ALLEN TAYLOR VS. B&J MARTIN, INC. ET AL
YEAR: 2021
EASTERN DISTRICT OF LOUISIANA
JUDGE JAY C. ZAINEY
DEFENSE: JEFFERSON TILLERY - JONES WALKER

83 IN RE: DORA MENDIETA ET AL VS. JAMES J BELL ET AL
YEAR 2021
UNITED STATES DISTRICT COURT OF 444TH JUDICIAL DISTRICT CAMERON COUNTY, TEXAS
JUDGE ROLANDO OLVERA
DEFENSE: JEFFERSON TILLERY - JONES WALKER

84 BOMMARITO, BOSIT VS BELLE CHASSE MARINE TRANSPORTATION, LLC. ET AL
YEAR 2022
EASTERN DISTRICT OF LOUISIANA
JUDGE ELDON E. FALLON
PLAINTIFF: DONALD F. DEBOISBLANC, JR.

85 MITCHELL, KEITH VS. B&J MARTIN, INC. ET AL
YEAR 2023
EASTERN DISTRICT OF LOUISIANA
JUDGE ASHE
PLAINTIFF: MR. MARC KUTNER, SPAGNOLETTI LAW FIRM

******************************************************************************************

**DEPOSITION TESTIMONY**
**SINCE 1987**

1. ABATE VS. FALCON DRILLING – sandblasting safety
2. ALLEN VS. CONTINENTAL CONSTRUCTION CO., INC.
3. ALFORD VS. NOBLE DRILLING
4. ALEXANDER VS. MARATHON OIL CO.
5. ANTOINE VS. BHP BILLITON PETROLEUM, INC. – hit by water from a psi hose
6. ANTHONY VS. ACBL
7. ANDERSON VS. DIAMOND OFFSHORE DRILLING – owt, boat to boat
8. ANDERSON VS. HARVEY GULF
9. AMOS VS. NABORS DRILLING – see trial – LO/TO cut off a finger
10. ARNAUD V. PINE BLUFF
11. ATKINSON VS. WARRIOR ENERGY
12. AUCOIN VS. CAL DIVE INTERNATIONAL
13. BARBER VS. C&C TECH
14. BAYARD VS. CAMERON – struck with chain binder, fall from the transporter
15. BAUCOM VS. SISCO STEVEDORING, LLC, WARRIOR & GULF

16. BEECH VS. PREMIERE
17. BELL VS. K&K TRANSPORTATION, INC.
18. BELL VS. OTTO CANDIES
19. BENOIT VS. CRAIN BROS, INC.
20. BERNARD VS. GREAT LAKES DREDGE & DOCK CO.
21. BILLINZON VS. CONOCO - stairs
22. BILLIOU VS. SEA SUPPORT – swing rope from platform
23. BILLIOT VS. CHEVRON – fall protection
24. BLAIR VS. BLAKE DRILLING
25. BLANCHARD V. ROWAN COMPANIES, INC.
26. BOMMARITO VS. BELLE CHASSE MARINE TRANSPORT crane operations
27. BOREL VS. CHEVRON
28. BOSARGE VS. MAGIC MIKE
29. BOUDREAUX VS. USA & BAY MANAGEMENT
30. BOUQUE VS. CHEVRON
31. BOURGUE VS. DIAMOND
32. BOUTIN VS. NEWFIELD EXPLORATION
33. BOWMAN VS PAN AM WORK SERVICES
34. BRACEY VS. HALLIBURTON ENERGY SERVICES – SLIP & FALL
35. BRANIFF VS. BLUE STREAK
36. BREAUX VS. J. W. STONE – dropped gear - lifting
37. BRILEY VS. GLOBAL INDUSTRIES- lifting pipe
38. BRISTER V. TEXACO
39. BROUSSARD VS. UNION
40. BRUNET VS. GLOBAL PIPELINE PLUS
41. BURLEIGH VS. FEDERATED MUTUAL INSURANCE – SLIP IN BATHROOM
42. BUTEAUX VS. R&B FALCON
43. BYRD VS. ROWAN – lifting chemical sacks
44. CABOT OIL VS. SMITH MARINE – hurricane evacuation
45. CANIK VS. NATIONAL UNION
46. CANTRELLE VS. BLUE STREAK – personnel net
47. CARDENAS VS. MIKE HOOKS, INC.
48. CISNEROS VS. MARQUETTE TRANSPORTATION gangway and lifting luggage
49. CHARRON VS. HORNBECK OFFSHORE SERVICES, INC. crane and rigging slings
50. CHIASSON VS. MAKO MARINE OPERATORS
51. CHATMAN VS. CARGILL, INC.
52. CHENEUERT VS. GARGILL
53. CHEANAU VS. COASTAL GARGO – crane – load dropped
54. CHICK VS. EXXON – struck by falling valve stem.
55. CISNEROS VS MARQUETTE TRANSPORTATION – lifting his bag onto a boat
56. CLEMENTS VS. GULF RESOURCE - lifting
57. CHOATE VS. ALLIS-CHALMERS - struck by pipe
58. CHOO VS. EXXON

59. COLMAN VS. TRANSOCEAN – slip and fall
60. COLIN VS. AEP MEMCO, LLC Crane & rigging
61. COLLING VS. TIDEWATER
62. COLLINS VS. CARDINAL
63. COLLINS VS. DALE MARTIN OFFSHORE – fall down a stairway
64. COLLINS VS. SEA HORSE MARINE – Crane & rigging
65. COMMINGS VS. MIKE HOOKS, INC.
66. CONOCO VS. HOFMAN MARCELLO
67. CORMIER VS M&M WIRELINE ET AL
68. COTO VS. MCDERMOTT- barge sunk in a hurricane
69. CRAWFORD VS. L&L
70. CROSBY VS. R&B FALCON
71. CRUMP VS. DELOACH MARINE SERVICES, LLC. – pelican hook released fell
72. CURTIS VS. CHEVRON U.S.A., INC.
73. DAGGS VS. GULF ISLAND CONTRACTORS, INC.
74. DAHL, ROBERT VS. SWIFT ENERGY OPER – slip and fall on wet plywood
75. DARDAR VS. CONOCO
76. DAVID VS C&G BOATS, INC. – personnel net
77. DELANEY VS. MERCHANTS RIVER TRANSPORTATION
78. DEROCHE VS. BERRY BROTHER – Fire on a tank battery
79. DEROUEN VS. HERCULES LIFTBOAT COMPANY, LLC – personnel net transfer
80. DESHOTEL VS. KMART CORP
81. DICKEY VS. TAIRA LYNN MARINE
82. DIXON VS. MAREENO ENERGY MARINE
83. DOMINGUE VS. CHEVRON guarding ladder access way
84. DUERISON VS CLIFF DRILLING
85. DUPLECHIN VS. DUPHIL, INC. - Crane
86. ESKINE VS. RONCO BARGE
87. ESTAY VS. TERMINAL STEVEDORES, INC.
88. FAUCHEAUX VS. TERREBONNE PARISH
89. FERNANDEZ VS. VICTOR EQUIPMENT CO. – gauge exploded
90. FOLEY VS. NORMAN PIPELINE – lifting engine head
91. FOLLIS VS. CHILES ALEXANDER - crane
92. FORSTER VS. SUBSEA
93. FOY VS. HOME DEPOT, INC. – struck by a forklift
94. FOX VS. TEXACO – no swing rope fell trying to get on a jacket.
95. FRANCIS VS. JOHN E. GRAHAM & SONS
96. FREEMAN VS. CHEVRON – slip down a stairway
97. FROST VS. MARATHON OIL CO. – struck by sling on an air tugger
98. GASPARD VS OPI – Stairway
99. GARZA, CESAR VS. CALLAN MARINE –trip on lines and debris on deck tender boat
100. GANT VS. SOUTHLAND ENERGY SERVICES, LLC
101. GILPATRICK VS. ENSCO OFFSHORE COMPANY

102. GINN VS. ROWAN – lifting
103. GOTCH VS. TRANSOCEAN INC
104. GRANTHAM VS. AVONDALE INDUSTRIES
105. GRAY VS. TEXACO
106. GREEN VS. ARIES - Gangway
107. GRINDLEY VS. R&B FALCON
108. GUIDRY VS. DIAMOND TANK – Lifting
109. GUILLORY VS. SEA MAR MANAGEMENT
110. HARRINGTON VS COLUMBIA GULF CO, ET AL – hot work on a pipeline
111. HAMMOND VS. MCDERMOTT – struck by equipment
112. HAWKS VS. LUHR BROS – manual material handing on push boat engine room
113. HAYLES VS. SONAT PRODUCTION – lifting valve
114. HAYNES, VS. MOMENTIVE SPECIALTY CHEMICALS, INC.
115. HAWKINS VS SEA SUPPORT VENTURES, LLC. Stepped off walkway
116. HEBERT VS. M. HOOKS, INC.
117. HEBERT VS. MAINTENANCE ENTERPRISES, INC.
118. HELMER VS. F & B FALCON
119. HENDERSON VS. ISLAND OPERATING CO. – CRANE RIGGING
120. HENRY VS. L&A CONTRACTING, CO.
121. HOMER VS. DNOW LP – fall from heights
122. HILL VS. CROSS MARINE – fell from a structure
123. HUVAL VS. C.F. BEAN – lifting sling off crane's bucket
124. JACKSON VS. YMCA – slip in the bathroom
125. JOHNSON VS. SUBSEA
126. JOHNSON VS. EXXON DRILLING CO.
127. JOHNSON VS. GLOBAL
128. JOHNSON VS. GULF TRAN, INC.
129. JONES VS. PMI, CHEVRON, HOUMA INDUSTRIES
130. JONES VS. NORTH AMERICAN
131. JONES VS. BISSO, INC.
132. JONES VS. PRODUCTION MANAGEMENT, CHEVRON, HOUMA INDUSTRIES
133. JORDON VS. INTERCONTINENTAL BULKTANK CORP
134. JOSEPH VS. OMEGA PROTEIN, INC.
135. KENT, RONALD VS. SOUTHERN TOWING COMPANY – moving pump off barge
136. KUYKENDALL, TOMMY VS KIRBY CORP.
137. KUITHE VS. GULF CARIBE MARITIME struck by pressure from hose - tankerman
138. LANDRY VS. GULF CREW
139. LANDRY VS. G. C. CONSTRUCTORS, A JOINT VENTURE – LIFTING
140. LASSEIGNE VS. CHEVRON – s/s fitting valve failed under pressure
141. LAWRENCE VS. APEX, INC.
142. LEBLANC VS DYNAMIC OFFSHORE
143. LEDET VS. KOCH SERVICE, INC. – Transfer hose lifting
144. LEDET VS. JO DE –fall from heights

145. LEE VS. CENTRAL GULF – slipped down the ladder
146. LEE VS. GENESIS BOAT RENTALS, INC. - ladder
147. LEONARD VS. MARATHON – Air tugger/rigging
148. LINDOT VS. GREAT LAKES DREDGE & DOCK
149. LITTLE VS. WESTERN HERITAGE INSURANCE – slip fall on the entrance to bldg
150. LITTETON VS. TRANSOCEAN OFFSHORE DEEPWATER DRILLING. INC
151. LOPEZ VS. MARINE DRILLING CO.
152. LOPEZ VS. TIDEWATER, MARINE DRILLING - slipped on a tire at a dock
153. LUDEAU VS. PENROD
154. LUTRELL VS. JWP BOAT RENTALS – no gangway
155. LYONS VS. NORTHSTAR OFFSHORE ENERGY-
156. MANUAL VS. OTIS – slipped on the gangway.
157. MARCEL VS. LEBOUF BROTHERS slipped down the shipyard stairway
158. MARONEY VS. PETROLEUM SERVICES, INC. – slipped on a walkway
159. MARONGE VS. HUNT PETROLEUM – fall from
160. MASSEY VS. ROWAN DRILLING CO. – lifting chemical sacks.
161. MATHIS VS. LAFAYETTE
162. MATTER OF TAIRA LYNN LIMITED NO. 7 - explosion and fire on barges
163. MCINNIS VS. PARKER DRILLING Trip and fall on the rig floor
164. MCNABB VS. TORCH ENERGY COMPANY – fire explosion
165. MECHE VS. MARINER – fire & explosion on a production platform
166. MEGEE VS LAREDO – machine guarding
167. MEYERS VS. LA CUSTOM COAT
168. MORALES, JORGE & PEDRO GALVAN VS. CALLAN MARINE, – swamped boat
169. MOREE VS. NABORS OFFSHORE -
170. MINCHEW VS. HELIX ENERGY SOLUTIONS – fall from heights
171. MORRIS VS. DIAMOND " M "
172. MORRISON VS. THE SOUTH CENTRAL LOUISIANA TECHNICAL COLLEGE
173. MOTT VS. FALCON DRILLING CO
174. NAVA S. JOHN BLUDWORTH SHIPYARD – Sandblasting equipment
175. NGUYEN VS. RTA – fall protection
176. NICHOLS VS. WEEKS MARINE, INC. – slip fall off winch
177. NIX VS. SUBSEA INTERNATIONAL
178. NOEL VS. DIAMOND OFFSHORE DRILLING, INC.
179. NORMAND VS CANAL PLACE - Stairway
180. NORRIS VS. CXY ENERGY, INC.
181. NUGENT VS. HERCULES
182. NUNZ VS. CLAYTON W. WILLIAMS JR.
183. OWENS VS. ABDON CALLAIS OFFSHORE, INC.
184. PATTON VS. AIR PRODUCTS, INC. – scaffolding handrail failed fall protection
185. PAES VS ROWAN DRILLING – crane operations
186. PADGETT VS FIELDWOOD ENERGY, LLC – fall protection
187. PADRON VS. CALLAN MARINE – struck by excavator load - dredging

188. PALAOMBO V. CAMERON BOAT RENTALS – slip in the galley
189. PARTIN VS. SUPERIOR ENERGY SERVICES, INC. – slip fall on edge of bldg.
190. PARFAIT VS. TRANSOCEAN & SHELL – fell from work stand
191. PARFAIT VS PERFORMANCE ENERGY SERVICES, INC – struck by falling object
192. PARKER VS. CROWN
193. PERRIOR VS. COOPER T. SMITH – ingress/egress out of a barge hatch
194. PERRON VS. MARQUETTE TRANSPORTATIONS – swing rope vessel to vessel
195. PESSON VS. ABSG CONSULTING – stairway on casino
196. PICOU VS. DIAMOND – slipped on the dock
197. PHILLIPS VS. BRAIN CAPPY – fall downstairs no handrail
198. PICOU VS. DIAMOND REEF SEAFOOD – slip fall dock
199. PITRE VS. MESA OPERATING LTD.
200. POORE VS. TRACTOR HYDRO
201. PORTALIS VS. EXXONMOBIL PIPELINE
202. PRICE VS. CAMERON BOAT RENTALS, INC. – slipped downstairs
203. QUIBEDEAUX VS. UNION OIL – fell over the handrail.
204. QUINTANA VS. LAZER, INC.
205. RAGUSA V. GULF COAST LUBE
206. RANGEL VS. PETROLEUM TREATERS – fire explosion
207. REDMANN VS. TRUE NORTH SALMONE US INC. – amputation unguarded winch
208. RICHARD VS. MONCEAUX – fall from scaffolding
209. RICHARD VS. PRIDE OFFSHORE
210. RICHARDSON VS. TURNER INDUSTRIES – struck by a falling object
211. RICO VS. LA GAMING – Slipped on the gangway
212. RITZELL VS. GULF MARINE ENGINEER
213. RHINE VS. BAYOU PIPE COATING
214. ROBERTSON VS. ANADARKO PETROLEUM – slip non-skid paint
215. ROBIN VS. WEEKS MARINE – boat struck a submerged pipeline
216. ROMERO VS. CONSOLATA NURSING HOME, INC. – trip and fall
217. ROZMARYNOSKI VS. J. RAY MCDERMOTT
218. SAMPSELL VS. B&I WELDING – lifting pipe
219. SANDERS VS C&G WELDING
220. SESSIONS VS. SUNLAND CONSTRUCTION, INC. – OWT push boat
221. SIMS VS. ENERGY CRANE
222. SIMON VS. LEGACY OFFSHORE
223. SINGLETARY VS. TERRAL RIVER SERVICE, INC.
224. SMITH VS. GULF CREWS, INC.
225. SMITH VS. CSE AUTOMATION
226. SMITH VS. ROWAN DRILLING – fire in confined space.
227. SONNIER VS. NOBLE DRILLING – lifting equipment
228. SONNIER VS. DELOACH MARINE SERVICES, LLC – manual material handling
229. SPISAK, TIMOTHY VS. APACHE CORP. – material handling chicksan
230. SPRATLING VS. EDISON CHOUEST slip in the engine room

231. St. JOHN VS. EPIC - diving
232. STEINWINDER VS. MCCALL BOAT RENTALS, INC. – swing rope.
233. STELLY VS. MIKE HOOKS – struck by a boat in the head.
234. STERLING VS EXXON DRILLING
235. STEVENS VS. ENERGY XXI – personnel net transfer
236. STEWART VS. BISSO
237. TALEVICH VS. CARDINAL – fell off personnel net
238. TAYLOR VS. TESCO CORP
239. THE MATTER OF TAIRA LYNN LIMITED fire and explosion Kirby barges
240. THERIOT VS. PAULSEN – dock plate fell
241. THIBODEAUX VS. CHEVRON – swing rope transfer, fell in the water
242. THOMAS VS. GALLO struck head on piping
243. TISSUE VS. PENROD – Hand tools misuse
244. TRANSPORTATION VS. SOUTH COAST – shocked while welding
245. TURNER VS. EXXON
246. TYLER VS. TORCH - crane & rigging
247. USA ABATEMENT VS. MOBIL EXPLORATION
248. USE VS. HERCULES OFFSHORE, INC.
249. VALLECILLO, RENE VS MCDERMOTT, INC. – crane buoy removal from deck
250. VERDIN VS. FOREST OIL – fell in a hole in the deck,
251. VERDIN VS. CHEVRON & WARREN PET. – fall from the tank
252. VIATOR VS. GORDON'S TRUCKING CO. – struck by a boat.
253. VITAL VS. COASTAL CATERING. LLC – stairway.
254. YOUNG VS. INTERMOOR, INC. – pry bar, lifting case
255. WALKER VS SUNLAND CONSTRUCTION, INC. ET AL – working off of a float
256. WASHAM VS. OSFI
257. WEDGE VS. CAJUN DEEP FOUNDATIONS
258. WILCOX VS. WILD WELL
259. WILEY VS. TRANSOCEAN – crane/crush by pipe
260. WILLIAMS VS CHEVRON – trip and fall on piping on deck
261. WILSON VS. RAY BRANDT NISSAN trip non painted yellow curb
262. WOMACK VS. FREEPORT, BAKER/MO – crane and rigging
263. WOOD VS. LONGNECKER PROPERTIES, INC. ET AL - step into D ring pan and fall
264. WOODEL, BRADLEY VS. GLOBAL INDUSTRIES OFFSHORE, LLC - Personnel net
265. WYKOFF VS. INTERNATIONAL MARINE, INC. – welding shock
266. ZUNIGA, NICOLAS VS ORION MARINE CONSTRUCTION - manual material lifting