**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **WILLIAM AUSTIN III** | * | **CIVIL ACTION NO.: 2:23-CV-01602** |
| | * | |
| **v.** | * | |
| | * | **JUDGE: LANCE M. AFRICK** |
| **SONTHEIMER OFFSHORE** | * | |
| **CATERING CO.** | * | **MAGISTRATE JUDGE:** |
| **d/b/a SONOCO and WEEKS** | * | **DONNA PHILLIPS CURRAULT** |
| **MARINE, INC.** | * | |

**OMNIBUS MEMORANDUM IN OPPOSITION TO DEFENDANT, WEEKS MARINE, INC.'S, MOTION IN LIMINE TO EXCLUDE TESTIMONY AND OPINIONS OF PLAINTIFF'S EXPERT, ROBERT BORISON AND MOTION TO STRIKE THE SUPPLEMENTAL REPORT OF PLAINTIFF'S EXPERT, ROBERT E. BORISON**

Plaintiff, William Austin, III, respectfully submits this Omnibus Memorandum in Opposition to Defendant, Weeks Marine, Inc.'s, Motion in Limine to Exclude the Testimony and Opinions of Plaintiff's Expert, Robert Borison[1] and Motion in Limine to Strike Mr. Borison's Supplemental Report[2]. Plaintiff respectfully requests that Defendant's motions be denied for the reasons stated below.

## I. BACKGROUND

Defendant, Weeks Marine, Inc., has brought before the Court two motions seeking to prevent Plaintiff, William Austin, III, from calling to the stand a well-qualified and respected maritime safety expert, Robert E. Borison. Since 1992, Mr. Borison, has qualified as an expert in the field of maritime safety practices, and how those guidelines apply to the analysis of maritime accidents, at least 85 (Eighty-Five) times in the state and federal courts of Louisiana, Texas, Mississippi and Illinois. Of those cases, Mr. Borison has been accepted as an expert in his field

[1] Court Record, Document 34
[2] Court Record Document 38

28 (Twenty-Eight) times in the Eastern District of Louisiana, including three times before the presiding Judge in this matter, the Honorable Lance M. Africk. [3] Mr. Borison's *curriculum vitae* details his decades of practical work experience, professional training and continuing education in the maritime industry and the safety practices peculiar to it.[4] Significantly, Weeks Marine's motions do not find fault with Mr. Borison's professional qualifications or raise serious objection to his practice of applying a "root cause analysis" to accidents he investigates.

Instead, Weeks Marine's first motion to exclude Mr. Borison's testimony asserts that his expertise is unnecessary for the jury to decide the liability issues in this matter. Defendant's motion argues this case can be resolved solely by the application of the jury's "common sense". Weeks Marine's first motion also argues Mr. Borison's testimony would introduce inadmissible conclusions of fact and law and thereby improperly sway the "impressionable" jury in favor of the Plaintiff. Plaintiff's counsel struggles to understand how a jury venire with sufficient "common sense" to resolve the liability issues in this case would also be so susceptible to Mr. Borison's charms. Nevertheless, as the Court instructs every jury, an expert's opinion is not written on a stone tablet and delivered from the top of Mount Sinai. A jury is instructed to weigh an expert's opinion against the facts it is based upon and the accepted rules and practices that the expert has applied to those facts. The expert's role is to assist in educating the jury on which rules, regulations and accepted practices are applicable to the facts the jury determines are relevant to the case. This is exactly what Mr. Borison has done in his professional practice since 1992.

In addition to their Motion in Limine to Exclude the Testimony and Opinions of Robert Borison, Weeks Marine has also filed a Motion to Strike Mr. Borison's December 24, 2023

[3] Court Record, Document 34-6 pages 29-41.
[4] Court Record, Document 34-6 pages 14-29

Supplemental Report. This second motion repeats the first motion's arguments and adds to them new claims of unfair prejudice and surprise. Weeks Marine claims it will suffer if Mr. Borison is allowed to supplement his original "deficient" report. Although Mr. Borison's second report is admittedly beyond the due date of October 19, 2023 set out in the Court's Scheduling Order, Weeks Marine's claims of surprise and unfair prejudice are, at best, disingenuous.

In the Introduction to his supplemental report, Mr. Borison states:

"This **supplemental** ROOT CAUSE ANALYSIS report investigates the accident that occurred aboard the ***R.S. WEEKS***, a trailing suction dredge (Industrial Vessel), owned and operated by Weeks Marine, Inc., on or about October 28, 2020, at or about 8:00 AM, and outlines the findings from that investigation.

Mr. William Austin was allowed to leave the dredge to catch a crew boat to move his vehicle because a hurricane was coming where the captain positioned the dredge in Venice, LA. Mr. Austin slipped from a rain- covered tire attached to the dredge ***RS WEEKS*** by a chain and sustained his injuries when he fell from the tire to the deck of a crane barge moored next to the dredge. Because of the poor investigation methods used by Weeks Marine's captain, it was not clear if Mr. Austin had fallen onto the crew boat there to transport him to the dock or another undescribed barge.

Where Mr. Austin landed does not change my opinion that a rain-soaked tire is not a suitable method to transfer from the dredge. Still, the dredge should have provided a ladder, gangway, or other safe means per the regulations outlined by Weeks Marine's **ACCIDENT PREVENTION PLAN** and other well-accepted safety standards included in this report.

The two items I received that required me to produce this supplemental report were the deposition of Captain Isaac Martinez and the photographs taken by Mr. William Austin. Captain Martinez's deposition cleared up issues dealing with his role in deciding where the workers would make the transfer on the dredge. Captain Martinez's deposition clearly stated that while he was the only person responsible for the safe transfers to and from his dredge, he allowed his Deck Captain, Mr. Robert Bob Hagan, to usurp his safety responsibilities. Captain Martinez knew nothing about the accident and how it transpired or conveniently forgot all aspects of the accident. Documents produced in discovery relating to Captain Martinez's duties, Accident Reports, witness statements, etc., could not be relied on as accurate in describing the events leading up to Mr. Austin's accident.

The photographs produced by Mr. Austin clearly show what vessels, barges, and tug boats were present on the day of his accident and the following day, **AUSTIN D-6 – TAKEN ON 10/29/2020 @ 8:30 AM**. The photographs clear up the photograph produced by the defense, **WEEKS MARINE 000111**, which erroneously describes the accident scene showing a tire, but fails to state that the dredge moved the crane barge from the photograph."[5]

---

[5] Court Record Document 38-3, page 2.

The Court may note that that Mr. Borison's original report is dated October 9, 2023. At that time despite numerous requests by Plaintiff's counsel, defense counsel had not produced Captain Isaac Martinez for a deposition, pleading the Captain's work schedule. The Captain's deposition was obtained on November 2, 2023. As stated in his Introduction to the supplemental report, Captain Martinez's deposition clarified who had responsibility on the *RS Weeks* for the methods of transferring personnel on and off of the dredge barge. It is hard to imagine how this fact, and its ramifications, could be a surprise to Weeks Marine.

The other material that prompted Mr. Borison's supplemental report were 5 (five) photographs of the scene of the accident taken by Plaintiff on the day of and the day after the accident. [6]. They were not produced to Mr. Borison for his review prior to his original report because Plaintiff had not been able to locate them. After the October 9, 2023 original report, Plaintiff located the old mobile phone he used to take the pictures and forwarded them to Plaintiff counsel. The photographs were produced to all opposing counsel and simply show the location of the vessels involved. As Mr. Borison states in his supplemental report, these photographs serve to better illustrate Plaintiff's description of the accident. They do not add any new information that Defendants were unaware of prior to Borison's supplemental report. In fact, at Plaintiff's October 26, 2023 deposition, during which all defense counsel were present, defendants were made directly aware of the scenario that the photographs serve to illustrate:

By Mr. R. Patrick Ray;

Page 64, line 21: Q. Yeah. Your plan was to step on the tire, and then step down to the barge, right?

A. The plan was tire, tire, barge.

[6] See Plaintiff's Exhibit 1, photographs labeled "Austin D5-10".

Q. Was there a tire on the other barge?

Page 65, line 1: A. Yes, sir.

Q. Okay. So you would have to step across two tires and get on the barge?

A. Yes, sir.[7]

The five photographs found by Plaintiff and produced to his counsel, who forwarded them onto Mr. Borison and all defense counsel, are neither new nor prejudicial nor surprise evidence . They demonstrate the scene of the accident as Plaintiff recorded it shortly after its occurrence. It is hard to imagine why Weeks Marine who was immediately aware of the accident, with safety personnel on the scene, did not take similar photographs as part of their investigation. Perhaps that is a question the Weeks personnel can answer at trial.

It is significant to note that Weeks Marine does not object to the authenticity of the photographs. There is no accusation in Weeks' motion that the photographs do not show the vessels that Plaintiff testified were involved. If the timing of the production of photographs, and their incorporation into Mr. Borison's opinions, might be prejudicial to Weeks, then the Court has remedied that potential for prejudice by extending, without objection from Plaintiff's counsel, the time for Weeks retained safety expert witness to respond with his own supplemental report. Indeed, Weeks' expert, Captain Strouse, has issued his own Supplemental Report addressing Mr. Borison's Supplemental Report. [8]

As is the norm in this type of litigation, should this matter proceed to trial, each expert witness will be subjected to a *voire dire* examination by opposing counsel, and should the Court

[7] See Plaintiff's Exhibit 2, deposition of William Austin, III.
[8] See Plaintiff's Exhibit 3, Supplemental Report from Capt. Larry E. Strouse.

accept that witness's qualifications, the witness will give the jury the benefit of his opinions and the reasons that support them, subject to cross examination.

## II. <u>ARGUMENT AND AUTHORITIES</u>

### A. The Standard for the admission of acceptable expert witness testimony.

Opinion testimony is admissible under the Federal Rules of Evidence if: (1) the witness is qualified as an expert by knowledge, skill, experience, training, or education; (2) the expert's reasoning or methodology underlying the testimony is sufficiently reliable; and (3) the testimony is relevant. The party offering expert testimony is not required to establish the correctness of the opinion; rather, the proponent of the opinion testimony bears the burden of establishing "by a preponderance of the evidence that the testimony is reliable." Both the determination of reliability itself and the factors taken into account are left to the discretion of the district court consistent with its gatekeeping function under FED. R. EVID. 702.

> "A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if ... the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or determine a fact in issue...." FED. R. EVID. 702(a). Expert testimony "serves to inform the jury about affairs not within the understanding of the average man." *United States v. Moore*, 997 F.2d 55, 57 (5th cir.1993) (*quoting United States v. Webb*, 625 F.2d 709, 711 (5th Cir.1980)). An expert opinion is not helpful and is unnecessary when the trier of fact can "adeptly assess [the] situation using only [its] common experience and knowledge. *Welch v. Noble Drilling, Inc.*, No. 04–2689, 2005 WL 5950958, at *1 (E.D.La. Dec. 7, 2005) (Lemelle, J.).

**B. Borison's opinions are not simply fault-based conclusions**

Contrary to Defendant's argument, Mr. Borison is not simply providing fault-based conclusions. Further, even if Mr. Borison's opinions relates to legal issues such as fault that does not bar Mr. Borison's opinions. As explained by the Western District of Louisiana in *Woodard v. Andrus*, "testimony should not be excluded simply because a witness is trained in the law or because the testimony will touch on legal topics. In distinguishing admissible testimony from inadmissible testimony, the task for the Court is to ask whether the expert's opinions bear on some factual inquiry or whether they bear solely on the legal conclusions that are urged. In other words, "an expert may offer his opinion as to facts that, if found, would support a conclusion that the legal standard at issue was satisfied, but he may not testify as to whether the legal standard has been satisfied." *Woodward v. Andrus,* 419 F.3d 348 (5th Cir. 2005). Mr. Borison will not testify as to what a legal standard is or whether it has been satisfied. Mr. Borison's testimony relates to Mr. Austin's lack of training (and Weeks' lack of providing it), Weeks' failure to follow safety policy involving safety planning and hazard assessment, and Weeks' failure to follow accepted government standards. This is the factual inquiry before the Court and the information upon which Mr. Borison will opine. Mr. Borison does not simply state that Weeks Marine is at fault, but provides a detailed analysis as to how Weeks Marine and SUNOCO failed to train properly, failed to staff the job correctly, failed to properly plan the debarkation and follow established safety policy, and failed to follow Weeks' own standards for this work.. These facts relied upon by Mr. Borison in his opinion that Weeks Marine and/or SUNOCO are responsible for Mr. Austin's injury is the factual inquiry that separates purely legal conclusions from inadmissible legal conclusions. The fact that Mr. Austin puts fault on Weeks Marine is of no moment. Mr. Borison simply offers his opinion as to facts that, if agreed upon, would support

a finding against Weeks Marine. Mr. Borison will not, and has never, testified as to whether Weeks Marine provided an unseaworthy vessel or crew or whether Weeks Marine was negligent.

## III. CONCLUSION

There is ample evidence before the Court on the relevance and reliability of Plaintiff's liability expert, and how this information is well within the expertise of Mr. Borison. Mr. Borison's practical experience, specialized training and knowledge of the applicable safety statutes, industry guidelines and these particular Defendants own safety rules are topics beyond the scope of the average juror's common-sense. Mr. Borison's testimony will be of great assistance in explaining these topics to them. Defendant has failed to demonstrate how any of this information is irrelevant or would be unhelpful to a jury. This Court should deny Defendant, Weeks Marine, Inc.'s Motions in Limine to Exclude Testimony and Opinions of Plaintiff's Liability Expert and Exclude the Supplemental Report of Plaintiff's Expert, Robert E. Borison.

Respectfully submitted,

**GARNER & MUNOZ**

*/s/ John G. Munoz*

Louisiana Bar No. 9830
935 Gravier Street, Suite 1140
New Orleans, Louisiana 70112-2411
Phone: 504-581-7070
Facsimile: 504-581-7083
Email: jgm@g-mlaw.com

***Attorney for William Austin, III***

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of this document will be served or has been served on all interested parties in accordance with the Federal Rules of Civil Procedure on the **January 9, 2024.**

*/s/ John G. Munoz*

John G. Munoz